Daniel Brice, Respondent, *v.* Paul Bauer, Appellant.

Defendant kept a number of dogs which were chained up day and night about his buildings or yard; one of them, a dog of a ferocious and vicious disposition, became unfastened in some way, went upon plaintiff's premises, attacked and bit him without provocation, inflicting serious injuries. In an action to recover damages, it appeared that before plaintiff was injured one of defendant's servants, entrusted with the care of the dogs, had been bitten by this one. *Held*, that defendant was chargeable with knowledge of the vicious character of the dog, and, *it seems*, this would be so if it had not appeared that the dog had bitten another person before he bit the plaintiff, as the very purpose for which he was kept required a dog of a fierce nature; and that, therefore, defendant was charged with negligently keeping him.

One who has in his possession and under his control an animal dangerous, unless reasonable precautions are taken to prevent injury to others, is chargeable for an injury occurring because of his omission to take such precautions.

On the trial it appeared that after the injury defendant called plaintiff into his office, and the latter was allowed to prove the conversation, the substance of which was as follows: Defendant asked plaintiff what he was going to do about the matter; the latter replied that he did not know. Plaintiff thereupon said, "I'll give you $5 a week and pay the doctor's bill." Plaintiff declined the offer. *Held*, that in the absence of evidence that the offer was in compromise of any dispute between the parties, or of a statement that the offer was to be considered as confidential, or without prejudice, the reception of the testimony was not error.

(Submitted January 23, 1888; decided February 28, 1888.)

Appeal from a judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made at the September Term, 1885, which affirmed a judgment in favor of the plaintiff entered upon a verdict.

The complaint stated that the defendant unlawfully kept a dog, well knowing him to be of a ferocious, mischievous and vicious disposition, and accustomed to attack and bite mankind; that on the 7th of December, 1883, the dog wrongfully came upon the plaintiff's premises and there attacked and wounded him. The answer was, first, a general denial; second, that the plaintiff committed a wanton and malicious

assault upon the dog; and whatever the dog did to the plaintiff was by way of and in his own defense. After evidence on both sides, the defendant moved for a nonsuit upon the ground that there was "no evidence that the defendant owned the dog, or was in any way responsible for what the dog might have done; no evidence that the dog was vicious; and that there is evidence that the injury the plaintiff sustained was brought about by his own act, interfering on another person's premises in matters he was not requested to interfere in." The motion was denied, and after a charge, to which no exception was taken, the jury gave a verdict to the plaintiff.

*Jos. S. Ridgway*, for appellant. To entitle a plaintiff to recover in an action of this character, it must appear by proof that the defendant owned, or harbored, and controlled the dog; that the dog was vicious, or accustomed to bite; and that the defendant had knowledge of such propensities of the dog, and therefore was guilty of negligence in suffering the dog to be at large. (*Logue* v. *Link*, 4 E. D. Smith, 63; *Kelly* v. *Tilton*, 2 Abb. Ct. of App. 495; *Buckley* v. *Leonard*, 4 Den. 500; *McGaskell* v. *Elliott*, 5 Strob. (S. C.) 196; *Lavarone* v. *Mangianti*, 44 Cal. 138; *Partlow* v. *Haggerty*, 35 Ind. 178; *Kreightlinger* v. *Egan*, 55 Ill. 235; *Muller* v. *McKesson*, 10 Hun, 44.) Defendant's offer to pay plaintiff $5 per week and the doctor's bill was no evidence of the *scienter*. (*Beck* v. *Dyson*, 4 Camp. 198; 1 Addison on Torts, 312 note *n*.)

*A. Simis, Jr.*, for respondent. As there is no peremptory rule of law which requires a tribunal to accept as true the testimony of an interested witness, the verdict of the jury should not be disturbed. (*McNulty* v. *Hurd*, 86 N. Y. 547.) In an action against an owner of a ferocious dog, or other animals, for injuries inflicted by it, the gravaman of the action is the keeping of the animal with knowledge of its propensities, and as to the latter, proof that the animal is of a savage and ferocious nature is equivalent to express notice. The

owner is bound to keep the animal secure, at his peril, and if it does mischief, negligence is presumed. This presumption cannot be rebutted by proof of care on the part of the owner in keeping or restraining it, and he is absolutely liable unless relieved by proof of some act or omission on the part of the person injured. (*Muller* v. *McKesson*, 73 N. Y. 195.) Defendant's want of knowledge of the dog's disposition would not prevent a recovery in this action. ( *Van Leuven* v. *Lyke*, 1 Coms. 517; *Beckwith* v. *Hatch*, 4 Burr. 2,092.)

Danforth, J. That the plaintiff was very seriously injured by the unprovoked and persistent attack of the dog is not denied. Indeed, no evidence was given upon the trial showing, or tending to show, the slightest foundation for the affirmative defense set up in the answer. It is alleged, however, by the defendant, that the evidence failed to show either (1) that the dog was owned or harbored by the defendant; or (2) that the dog was vicious or accustomed to bite; or (3) that the defendant had knowledge of such propensities. The last objection was not made at the trial; but upon all points we find quite enough evidence in the record to support the conclusion of the court below.

The dog was a cross · between a mastiff and a bloodhound or a Newfoundland; in color, dark brown, or between black and brown; of an unusually large size, solid and heavy, having a short, thick neck, and was, in fact, very ferocious. He came upon the plaintiff's premises in the evening, attacked and bit certain pigs which were gathered there, · and only desisted from doing so when, seeing the plaintiff he turned upon him, " went for his throat," which the plaintiff protected by his arms, but in spite of resistance the dog threw him upon the ground, bit him " seven times on one arm and five on the other;" and kept his hold in spite of the plaintiff's struggles and every effort on the part of neighbors, who, hearing the plaintiff's cries, had come to his assistance, until one, having a gun, shot the dog dead as he was making again for the plaintiff's throat.

He had before bit the defendant's coachman, one Robinson, and his wife. After he was killed his body was thrown into the street, and was there seen and identified as a dog belonging to the defendant. One witness, a workman employed by defendant, described the dead dog, and being asked to give the appearance of the dog before that time seen by him at defendant's, said, "The same appearance exactly;" the same in color, hair and size. Being asked: "You don't know whether it was the same dog or not?" Said: "I could not swear positively, but it looked like the same dog." The dog he saw at defendant's was at the time chained up in his stable, and being asked "whether you know anything about his disposition," said "he looked to be vicious to me." Another witness speaks of the dog as once owned by himself, and afterwards "around" defendant's, "probably from a year to fifteen months." Asked: "The dog that Mr. Bauer" (defendant) "had this length of time at his place, did you previously own him?" Answered: "Yes, sir." Asked: "What is your best impression as to whether the dog lying in the road was the same dog that was in Mr. Bauer's place?" Said: "I judge it was the same dog, to the best of my belief." Asked: "How was that dog kept at Mr. Bauer's place; chained?" Said: "When I saw him he was chained up in the yard." Again he testified that he saw him in defendant's yard "three or four times," each time before December, and "always chained up."

The defendant in his own behalf testified that he had not seen the dead dog, but that while he kept always "half a dozen dogs," they were always in chains day and night; "at night tied out to the buildings, in the day time in the house," "never unchained." He, however, said that he did not "attend to them personally," having in his employ a dozen men, Robinson among others. He had not heard that any of his dogs had been killed or were missing, or that Robinson had been bitten by any dog. Robinson was not called. The evidence of identity was as good as could be expected, and whether the dog was one harbored or owned by the defendant

was a question which the jury might reasonably be expected to be able to answer. The defendant was properly called upon for proof, and it seems plain that some of his servants, whose duty to his dogs made them familiar with their number and location, might have supplied better evidence, if the facts warranted it, than he was able to give to the jury.

I think the evidence actually in the case tends to establish that the dog complained of was the defendant's dog, and that the dog was of a ferocious and vicious disposition. Does it also tend to establish knowledge of that disposition on the part of the defendant? In *Baldwin* v. *Casella* (7 Ct. of Ex. [L. R.], 325), it is said "all dogs may be mischievous and therefore a man who keeps a dog is bound either to have it under his own observation and inspection, or if not, to appoint some one under whose observation and inspection it may be, and that person's knowledge is the knowledge of the owner." In the case before us Robinson was one of the servants to whose care the dog was entrusted, and Robinson was himself bitten by him before the plaintiff suffered. It is not material that the fact was not communicated to the master. Again, if the dog was the defendant's dog, the very purpose for which the defendant kept him charges him with knowledge of his character, and he is therefore chargeable with negligently keeping him, although it had not appeared that he had actually bitten another person before he bit the plaintiff. (*Worth* v. *Gilling*, 2 Com. Pl. [L. R.] 1.) In that case the court say, "the defendants admitted that the dog was purchased for the protection of their premises. Unless of a fierce nature he would hardly have been useful for that purpose." In *Buckley* v. *Leonard* (4 Denio, 500), an action for damages for injuries inflicted by a dog, it appeared among other things "that for the most part the defendant had kept his dog chained up in the day time and in his store nights," and the defendant having had a verdict it was reversed, the court saying, aside from proof that the defendant had notice of the dog's disposition, "the fact that he usually in the day time kept him confined, and in the night kept him in his

store, is strong evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to go at large."

The case of the defendant, therefore, is that of one who has in his possession and under his control an animal, dangerous, unless reasonable precautions are taken to prevent injury to third persons. In such case it is obvious the injury must have occurred by his neglect, and for the consequences he should be held responsible. (*Muller* v. *McKesson*, 73 N.Y. 195.)

A point is submitted by the appellant to the effect that the court erred in admitting evidence of a conversation between the plaintiff and defendant after the injury and before the commencement of the action. It appears that the defendant called the plaintiff to his office and inquired whether he "was the man bit by the dog." Plaintiff said, "yes," and now testifies, "he asked me what I was going to do about this case; I said I didn't know; that he knew best, so we had a few words talk; 'well,' he said, 'I'll give you five dollars a week and pay the doctor's bill;' so I made him answer back that that was too little to support my family, and then I came out; my arm was punishing me bad and I could not stand the pain; he said, 'I suppose you will sue me?' I said, 'I suppose so, too;' he said, then, he and I would have to fight it out the same as the dog and I had fought." Defendant's counsel moved to strike out the answer, assigning no ground. It was not error to deny the request. The conversation was sought by the defendant and entered upon without reservation. It does not appear that the offer to pay was in compromise of any dispute between the parties. The disagreement was in reference only to the amount, and the transaction might well be regarded a tacit admission of liability. In such a case even the offer of a sum by way of compromise is held to be admissible, unless stated to be confidential or made without prejudice. (*Wallace* v. *Small*, 1 Moody & M. 446; *Thompson* v. *Austen*, 2 Dow. & Ry. 358.) In this instance there was no caution of that kind, nor anything from which it could be inferred that

the offer was made by way of sacrifice or concession for the sake of peace, or in settlement or compromise of a disputed claim.

We think the case was one proper for the jury and that no error was committed by the trial court. The judgment appealed from should, therefore, be affirmed.

All concur, except EARL and PECKHAM, JJ., not voting.

Judgment affirmed.