GUSTAV SPECKMANN, by WILLIAM C. RICHARDSON, His Curator, Respondent, v. JOHN KREIG, Appellant.

St. Louis Court of Appeals, March 21, 1899.

1. **Damages:** VICIOUS DOG: SCIENTER. The dog being a vicious one of which propensity the defendant had knowledge, he kept it at his peril. Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it can not do any damage to any person who, without essential fault, is injured by it.

2. **Examination of Witness:** LEADING QUESTIONS. The privilege to ask a leading question is always addressed to the discretion of the trial judge, and will not be reviewed on appeal unless it clearly appears that the discretion has been abused.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

AFFIRMED.

A. R. TAYLOR and MORRIS LUCKER for respondent.

The appellant's first point that the word "premises" used in plaintiff's instruction was error is, we submit, without the slightest foundation. Premises mean "a building and its adjuncts," "realty and buildings," and we can't see where counsel for appellant would or could draw the line, or what other word he could use in view of all the circumstances and facts in the case. We submit that the place where the chickens are bought and the one where they are kept (chicken house or stable) are the same premises so far as this case is concerned. The plaintiff is entitled to recover if, first, the dog was vicious; second, the defendant knew its propensity; third, the defendant was negligent in suffering such a dog to run at large on his premises. State v. McDermott, 4

Cent. Rep. 559. Any person who keeps upon his premises a dog vicious and disposed by nature to bite human beings, does so absolutely at his peril if he knows of such disposition. 2 Am. and Eng. Ency. of Law, p. 366; McKaskall v. Elliott, 53 Am. Dec. 706; Oakes v. Spaulding, 40 Vt. 347; Godeau v. Blood, 52 Vt. 254; Staetter v. McArthur, 33 Mo. App. 222. A ferocious dog is a nuisance, and keeping it after notice of such disposition is so wrongful that the owner is liable for any neglect to keep it with such care that it can not do injury to any person who is not essentially at fault. Maure v. Wecandid, 81 Pa. 243; Munn v. Reed, 4 Allen, 432. After notice of vicious disposition, owner is bound to keep the dog at his peril. Shaw v. Craft, 37 Fed. Rep. 317; Morsel v. Baumann, 62 Ia. 57. A person who keeps a vicious dog, knowing him to be vicious, is *prima facie* liable to persons bitten. Woolf v. Chalker, 31 Conn. 121; Williams v. Moray, 74 Ind. 25; Lynch v. McNally, 73 N. Y. 347. In the latter case the court holds that neither ordinary care nor contributory negligence is a defense.

FRANK A. C. MACMANUS and WILLIAM McNAMEE for appellant.

The word premises has a meaning, but not of a certain, sole and definite character. In some instances it is synonymous with appurtenances, and sometimes includes both lands and tenements. Its use in the instruction at bar should have been accompanied by some qualifyingly or descriptive word, designating the exact part of the premises plaintiff had a right to. Bandalow v. People, 90 Ill. 219; State v. Wyl, 55 Mo. 67. Ordinarily appellate courts will not disturb the verdict of a jury, but when such verdict is at utter variance with both justice and law, as in the case at bar, it is the duty of an appellate court to set same aside. Empey v. Grand Ave. Cable Co., 45 Mo. App. 422; Hipslay v. Railway, 88 Mo. 348-353. The mere reading of the evidence in this case is

the best argument in support of the above proposition. Defendant's motion for a new trial should have been sustained. Staetter v. McArthur, 33 Mo. App. 218, and authorities cited.

BLAND, P. J.—The material averments of the petition are that Gustav Speckmann is a youth nine years old; that William C. Richardson, by and through whom he sues, is his duly appointed guardian; that on August 11, 1897, and for some time prior thereto, defendant was the owner and keeper of a dangerous and vicious dog and known to the defendant to be such; that on said day the plaintiff was sent by defendant into the yard of defendant to deliver some chickens; that at the time the dog was running loose in the yard and while plaintiff was performing the errand and while in defendant's yard he was attacked by the dog, and his leg was badly lacerated and torn by it, whereby he suffered injuries and was damaged in the sum of $5,000, for which he asks damages.

The answer was a general denial and a special plea of contributory negligence. The special plea was put in issue by a reply. A trial was had to a jury, resulting in a verdict and judgment for plaintiff for $600, from which defendant duly appealed.

The facts not controverted, briefly stated, are that plaintiff with his mother went to defendant's place of business (7009 S. Broadway) in the city of St. Louis with a dozen chickens for sale, which the defendant purchased and ordered his hired man (Baumgartner) to take to his barn and to turn them loose, that plaintiff accompanied Baumgartner to the barn; on their return they passed through the defendant's back yard where defendant's dog was running loose; that the dog attacked the plaintiff, threw or pulled him to the ground, and tore and lacerated his left leg above the knee, making a severe and painful wound, which was treated for five weeks

by a physician.    The dog continued his biting of plaintiff
until he was driven off by Baumgartner; that the defendant
had owned the dog for eighteen months and kept it for a
watch dog, tying it up in his cellar during the day and turning
it loose at night to watch his premises.    The only contro-
verted fact in the case of sufficient materiality to be noticed
is the circumstances under which plaintiff went into defend-
ant's yard.    Plaintiff testified that defendant gave Baum-
gartner eight of the chickens and placed the remaining four
in his hands and ordered him and Baumgartner to take them
to the barn and turn them loose.    He is corroborated in this
statement by the evidence of his mother and Baumgartner.
Defendant testified that he ordered Baumgartner to take the
chickens to the barn, but did not hand any of them to plain-
tiff, and did not know that he had gone to the barn with
Baumgartner, until he heard his cries when the dog attacked
him, and that he went to the barn without his knowledge or
consent.    Defendant in this statement is corroborated by
Dr. L. S. Reber, a witness who was present, and by the evi-
dence of Alvina Held, a witness who impeached the testi-
mony of Baumgartner on this point, by testifying that Baum-
gartner had made a statement to her in reference to plain-
tiff's presence in the yard inconsistent with his testimony.
The dog attacked and bit the plaintiff about 7 p. m., at which
hour the defendant's testimony shows he knew or believed
the dog had been unchained from the cellar and brought in
the back yard, for he warned Mrs. Speckmann (plaintiff's
mother) not to go into the yard because, as he stated, the
dog might be loose.    For plaintiff the court gave the follow-
ing instruction:

"First.    If the jury find from the evidence that the de-
fendant on and before the 11th day of August, 1897, was
keeping the dog mentioned in the evidence as biting the
plaintiff, and if the jury find from the evidence that said dog

was of a vicious disposition and likely to bite persons when unrestrained, by reason of such vicious disposition.

"And if the jury find from the evidence that the defendant knew of said vicious disposition of said dog before the 11th day of August, 1897, and if the jury find from the evidence that on the evening of August 11th, 1897, the plaintiff was on the premises of the defendant with his mother to sell and deliver chickens, and whilst so on said premises of the defendant the plaintiff was bitten by said dog on account of said disposition to bite strangers, and if the jury find from the evidence that plaintiff was at the time on defendant's premises with the assent of defendant, plaintiff is entitled to recover if he was exercising ordinary care according to his age and discretion, such as boys of his age and discretion would ordinarily use under like circumstances.

"If the jury find for the plaintiff they should assess his damages at such sum as they believe from the evidence will compensate him for any pain of body or mind that he has suffered, not exceeding the sum sued for."

The court gave the following instruction asked by defendant:

"The court instructs the jury that if they find from the evidence that plaintiff, by the exercise of such care as an ordinarily prudent and careful person of the age, experience, capacity and intelligence of the boy Gustav Speckmann would ordinarily exercise under similar circumstances would have avoided the happening of the injury complained of the verdict should be for the defendant."

The court refused the following asked by the defendant:

"Third.   The court instructs the jury that before plaintiff can recover in this case he must satisfy the jury by a preponderance of evidence.

"First.   That prior to the biting complained of, the defendant's dog was vicious, harmful, mischievous, dangerous, or had a propensity to bite mankind.

"Second. That before said biting defendant knew, or by the exercise of ordinary care he would have known of such propensity in said dog, and that the burden of proof is upon plaintiff.

"Third. That the alleged biting was occasioned by the negligent act or acts of defendant, and unless the jury find from the evidence that such facts have been proven by plaintiff, the verdict must be for the defendant.

"Fifth. If the jury find and believe from the evidence that the plaintiff was not directed to go into the yard of defendant and had no lawful purpose for going in there, and was not in there by consent, knowledge or permission of defendant, and that the entrance to said yard was made in the night time when the dog in question was loose, then your verdict should be for defendant."

The contention of appellant is that the basis of the action is negligence, and that his refused instructions should have been given. If it was incumbent on the plaintiff to entitle him to recover to show that defendant negligently sent him to the barn then the appellant's contention is undoubtedly correct. The evidence leaves no room for the shadow of a doubt that defendant knew of the vicious propensity of the dog. The fact that a dog is kept as a watch dog (as this one was) and is kept tied in the day and turned loose at night, is notice to the master that he is dangerous. Brice v. Bauer, 2 Am. St. Rep. 458; Brice v. Bauer, 108 N. Y. 428; Montgomery v. Koesler, 35 La. Ann. 1091; Good v. Martin, 57 Md. 606. Defendant's own testimony shows that he knew the dog was dangerous and that he knew or had good reason to believe the dog was loose at the time the plaintiff went into the yard; indeed *scienter* by defendant of the vicious propensity of the dog is not controverted. The law is the dog being a vicious one of which propensity the defendant had knowledge, he kept it at his peril. Strauss v. Lieff, 46 Am. St. 122; Conway v. Grant, 30 Am. St. Rep. 145;

Sylvester v. Maag, 35 Am. St. Rep. 874; Wolff v. Chalker, 81 Am. Dec. 175; McCaskill v. Elliott, 53 Am. Dec. 706; Arnold v. Morton, 25 Conn. 92; Smith v. Palah, 2 Str. 1264. And the gist of the action for injury by the dog, after knowledge of its vicious propensity had been acquired by defendant, is not negligence in the manner of keeping the dog, but is for keeping it at all. · The duty of the defendant when he acquired knowledge of the ferocious disposition of his dog "was to hang it," not to keep it, at the risk of the lives and limbs of children and of adults who might lawfully come upon or pass by his premises at night.    May v. Burdett, 9 Q. B. 10; Jones v. Perry, 2 Esp. 482; Mason v. Keeling, 12 Mod. 332; Wheeler v. Brant, 23 Barb. 324; Lynch v. McNally, 73 N. Y. 347; Muller v. McKesson, 73 N. Y. 195, and cases cited.    "Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it can not do any damage to any person who without essential fault is injured by it."    Mann v. Reed, 4 Allen, 431; How v. McNamara, 106 Mass. 281; Fish v. Skeet, 21 Barb. 333; 2 Wood on Nuisances, sec. 776; Massel v. Bowman, 62 Ia. 57; Mauer v. Wecandid, 81 Pa. St. 243.    Under the conceded facts there was no question of negligence or of contributory negligence in the case.    The vicious propensity of the dog is so well established, of which the defendant had knowledge, that under the authorities herein cited, and under his duty to his fellowman as a member of society, he was bound to so restrain his dog as to prevent injury being inflicted by it upon any one, without essential fault contributing thereto.    It is not claimed that the plaintiff was guilty of any fault or wrong in going upon the premises of the defendant when he was bitten by the dog and it is immaterial whether he was there by defendant's direction or of his own volition, and we perceive no error on the part of the learned circuit judge in refusing the instructions asked by the

defendant in relation to the questions of negligence. Plaintiff's counsel, over the objection of defendant, was permitted to put a few leading questions to the plaintiff as a witness, to which defendant excepted. The rule that leading questions should not be asked on the examination of a witness in chief, is not an inflexible one, where the witness under examination is an unwilling one, or unfriendly to the party calling him, and shows a disposition to withhold his evidence; it is always competent to ask him leading questions, if necessary to elicit the truth, and where the witness is ignorant or young and is timid, and hesitates to testify, it is equally competent to ask such leading questions as are necessary to put the witness at his ease and to put him on his way to testify and to draw out the truth of his knowledge touching the fact about which he is called to testify, and the privilege to ask a leading question is always addressed to the discretion of the trial judge and will not be reviewed on appeal, unless it clearly apears that the discretion has been abused. It does not so appear by the record before us. An impeaching question was asked the witness Baumgartner, which he was not permitted to answer, to which defendant saved an exception. Conceding that this ruling was erroneous it was subsequently cured by the admission of the impeaching testimony. We have been unable to find any reversible error in the record; on the contrary the case was tried and instructed on correct legal principles, and on the evidence the verdict was for the right party, and we affirm the judgment. All concur.