(75 App. Div. 154.)

DUVAL v. BARNABY.

(Supreme Court, Appellate Division, Third Department.   July 8, 1902.)

1. VICIOUS DOG—RUNNING AT LARGE—INJURIES—ACTION—NOTICE OF VICIOUS-
NESS—EVIDENCE.
Plaintiff was bitten by a dog belonging to one of defendant's children.
Defendant testified that she kept the animal in her barn as a watchdog,
that he would make a fuss if any one went near the barn at night, that
she never had him tied or muzzled, but that she had no knowledge of
his ever biting any one.   It appeared that he was allowed to go about
with one of defendant's children, that he was with this child when he
bit plaintiff, and that while with the same child he had bitten two
other people within the preceding year.   *Held*, that the evidence was
sufficient to warrant a finding that defendant had such notice of the
dog's vicious propensity as required her to muzzle or otherwise restrain
him from biting.

2. SAME—HARBORING VICIOUS DOG—LIABILITY FOR INJURIES.
One who harbors a vicious dog is liable for injuries inflicted by him.

Appeal from Clinton county court.

Action by John Duval against Julia Barnaby.   From a judgment
reversing a judgment in favor of plaintiff, he appeals.   Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH,
CHASE, and FURSMAN, JJ.

W. H. Dunn, for appellant.

H. S. Hoff, for respondent.

KELLOGG, J.   The record does not disclose on what grounds the
learned county court reversed the judgment of the justice court.   The
action was tried before a justice without a jury, and a judgment ren-
dered for $100 damages.   The plaintiff, a boy of 15 years of age, was
severely bitten by a "yellow bull dog."   There is abundant evidence
that the dog was vicious in fact.   That his nature was vicious, and his
propensity to attack and bite men and boys was sufficiently proven.
This dangerous propensity was proven to date back more than a year
prior to this biting of which plaintiff complains.   The defendant,
Julia Barnaby, as a witness, testified that she owned the house and
premises where the dog was harbored; that she had fed the dog for
three years; that she "kept the dog in barn to look after my things
as a watchdog; never kept the dog tied up or muzzled or locked up
during daytime; dog would make a fuss if you went near the barn at
night."   Being asked to whom the dog belonged, she replied, "To
the house."   From the testimony of Peter Barnaby it appears that the
dog belonged to one of the children in defendant's family.   The de-
fendant also testified that sometimes the dog went away with the chil-
dren of her family.   He was with one of these children on the day
plaintiff was bitten.   He was also with the same person when the
dog bit a boy by name of Charles King some two weeks before plain-
tiff was bitten.   He was with the same person about a year previous,
when he bit a boy named Frank King. · The defendant denies that she
had any knowledge that the dog had bitten any one before the plaintiff

¶ 2. See Animals, vol. 2, Cent. Dig. § 244.

was bitten. Considering the vicious nature of this species of the dog kind, the fact that he was kept as a watchdog to ward off trespassers, and shut in the barn nights for that purpose, and that he made "a fuss if any one went near the barn"; that within the previous year, while in company with a member of her own family, he had bitten two other boys,—I think it became a question of fact whether defendant did not have sufficient knowledge that the dog was vicious and dangerous, and liable to do the very thing the plaintiff here complains of. The evidence warrants the finding that it was the duty of defendant to so restrain the animal, by muzzle or otherwise, as to prevent the injury to others so natural to apprehend from a "yellow bull dog" with vicious reputation. The following language is quoted in Brice v. Bauer, 108 N. Y. 432, 15 N. E. 697, 2 Am. St. Rep. 454, with approval:

"All dogs may be mischievous, and therefore a man who keeps a dog is bound either to have it under his own observation and inspection, or, if not, to appoint some one under whose observation or inspection it may be, and that person's knowledge is the knowledge of the owner."

This bears directly on the question as to whether the knowledge of a member of defendant's family, who seems to have had custody of the dog when away from defendant's house, is not also to be imputed to the defendant. In the same case the following language is also quoted with approval:

"The defendants admitted that the dog was purchased for the protection of their premises. Unless of a fierce nature, he would hardly have been useful for that purpose."

I think it requires a degree of watchfulness on the part of the owner of a "yellow bull dog" kept and used as a watchdog, with every indication of a vicious propensity to bite mankind, and that the owner is fairly warned, and is not justified in waiting until some one has had his flesh torn off before he restrains the brute. It becomes a question of fact for a jury to determine in such cases whether the owner has not had the knowledge which would move a prudent man to remove the animal from opportunities to injure others. Did she have reasonable cause to apprehend the injury complained of? "Scienter" means no more than that. It was said in Hahnke v. Friedrich, 140 N. Y. 227, 35 N. E. 487:

"When a person keeps a dog for the purpose of guarding his property against trespassers or criminals, it is not unreasonable to infer knowledge on his part of the propensity of the dog to attack and bite mankind, and negligence in allowing him to be at large."

The question being one of fact, it was properly disposed of in justice court.

The defendant was held liable for harboring the dog. This was not error. Quilty v. Battie, 135 N. Y. 201, 132 N. Y. 47, 17 L. R. A. 521.

The exceptions taken on the trial to the admission of evidence present no error which authorized the county court in reversing the judgment.

The judgment of the county court is reversed, with costs to appellant, and the judgment of the justice court is affirmed, with costs in the county court. All concur.