### CLARK v. DISBROW.

(Supreme Court, Appellate Division, Third Department. December 3, 1902.)

1. ANIMALS—VICIOUS DOG—INJURIES—CUSTODY—KNOWLEDGE OF VICIOUSNESS—
    EVIDENCE.
        In an action for injuries to plaintiff while walking along a private way, by being bitten by a dog kept on a farm, of which defendant had charge, evidence *held* sufficient to justify submission of the question of defendant's control of the dog and knowledge of its viciousness to the jury.

Appeal from trial term, Montgomery county.

Action by Mary Clark against Benjamin N. Disbrow, impleaded with others. From a judgment in favor of plaintiff, and from an order denying a motion to set aside the verdict and for a new trial on the minutes, defendant Disbrow appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, and CHASE, JJ.

James Flynn, for appellant.

Benjamin F. Spraker (Andrew J. Nellis, of counsel), for respondent.

CHASE, J. The plaintiff, on the 18th day of May, 1896, while rightfully in a private road leading into a cemetery, was injured by a dog that suddenly jumped upon her back and bit her shoulder. The farm over which the private road passed was owned by two infant children of the defendant's wife. Prior to September 25, 1894, defendant and his family, including the said children of his wife by a former marriage, resided on said farm. While they so resided on said farm the dog, which was then owned by one of said children, was brought in a car from New York. The defendant looked after the dog, and, with a boy, took him from the car to the farm. It is stipulated in the action that "at the time of the acts complained of they [defendant and his wife] were in the occupation of the farm, but not living there; John Tesnow being in their employ, and living upon and working the farm." When defendant and his family, including said infant children, left the farm, the dog was left with Tesnow, the tenant on the farm. The viciousness of the dog is satisfactorily established. In October, 1895, a young girl went to Tesnow's house and opened the door, and just as she opened the door the dog rushed at her, and bit her wrist so that his teeth penetrated to the bone, and Mrs. Tesnow came and took the dog away. On another occasion a man going through the same private road was chased by the dog, and to escape from him he climbed a tree, and remained in the tree until Tesnow came and took the dog away. On another occasion a neigh-

bor came down the stairs of his barn, and found the dog in the barn, and he attempted to drive the dog away, when the dog leaped at him, and to escape the dog he ran back up the stairs and closed a trapdoor. For some time prior to the plaintiff's being bitten Tesnow ordinarily had the dog chained near the workshop, and while so chained he growled with mouth opened, and started at people passing near him. Although the defendant was not the owner of the farm, he personally assumed direction thereof. The defendant, after testifying to directions given by him, further testified:

"Q. Why did you send word to John? A. I had been doing business for the children. Q. What business? A. Looked after the place, and for my wife, too."

Every direction to the tenant in regard to the dog, so far as the record shows, came from the defendant, and when the plaintiff was bitten the tenant notified the defendant, and he came to the farm, and subsequently he gave the dog away, and when the person to whom the dog was given had some trouble with him, and refused to keep him, the dog, by the defendant's direction, was killed. Shortly after the plaintiff was bitten, and while the defendant was at the farm, in response to Tesnow's notice, the plaintiff's husband said to the defendant, "My wife is not the first one he bit; he bit Mr. Hout's girl;" and the defendant responded, "He did that in play; she had candy in her hand, and he wanted to play with her." The defendant denied such conversation, and further testified:

"Q. When you were at Mrs. Clark's house talking with Mr. Clark had you ever heard before that the Hout girl had been bitten? A. No; I told him I didn't know anything about the dog being ugly."

We are of the opinion that there was presented in this case, under all the circumstances, a question of fact as to the defendant's being in entire charge and control of the dog, and as to his knowledge of its viciousness, that justified its presentation to the jury for their determination.

Judgment and order affirmed, with costs. All concur.