SYLVERIA PERROTTA, as Administratrix, etc., of RALPH
    PERROTTO, also Known as RALPH PERROTTA, Respondent, *v.*
    LIBERTE PICCIANO, also Known as ALBERTO PICCIANO,
    Appellant.

First Department, March 7, 1919.

Animals — action to recover for death of child killed by watch-
    dogs — evidence justifying recovery — scienter as to ferocious
    disposition of animals — previous attack not essential — dogs
    kept expressly for purpose of guarding premises.

Action to recover for the death of a child nine years of age who, on attempting
    to recover a hoop from the defendant's premises, was set upon and killed
    by watchdogs owned by the defendant and kept to guard the premises.
    Evidence examined, and *held*, that the jury was warranted in finding that
    the dogs were of a vicious and ferocious disposition, that being established
    by the nature of the attack, there being also evidence of other outbursts of
    viciousness on the part of the animals.

If the defendant either knew or should have known that the dogs were
    vicious it was not necessary to prove that they had previously attacked
    any one, for the rule that every dog is entitled to one bite does not obtain
    in this State.

It was not necessary to prove that the defendant had personal knowledge
    of a previous attack by the dogs where their viciousness was shown by the
    nature of the attack itself and the defendant kept the dogs as watch-
    dogs, for in the exercise of ordinary care he could have discovered and
    remedied the danger.

*Held*, that the evidence warranted a finding that the defendant knew that
    the dogs were of a vicious disposition and that, irrespective of actual
    knowledge, he should have known that they were liable to attack persons
    venturing upon the premises that they were guarding.

Even if the fact that dogs are kept as watchdogs is not alone sufficient to
    charge the defendant with knowledge of their disposition it is some evidence
    of such knowledge.

LAUGHLIN and MERRELL, JJ., dissented, with memorandum.

APPEAL by the defendant, Liberte Picciano, from a judgment
of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Bronx on the 22d day
of June, 1918, upon the verdict of a jury for $3,000, and also
from an order entered in said clerk's office on the 28th day
of June, 1918, denying defendant's motion for a new trial
made upon the minutes.

*Arthur B. Kelly* of counsel [*Samuel Goldstein,* attorney], for the appellant.

*Eugene L. Bondy* of counsel [*J. George Metz,* attorney], for the respondent.

SHEARN, J.:

This action was brought to recover damages for the death of a nine-year-old boy, caused by his being attacked and mangled by two dogs owned by the defendant. The defendant resided at No. 230 East One Hundred and Fifty-first street, in the borough of Manhattan. Adjoining his back yard on the east was the back yard of a vacant house, No. 234, of which vacant house the defendant was the watchman. The back yard of No. 234 was surrounded by a board fence about five feet in height. In the fence between defendant's yard and the yard back of the adjoining vacant premises there was an opening, which permitted defendant's dogs to pass from one yard into the other, the proof showing that the dogs had the full run of both premises. One of these dogs was a brindle bull dog, standing about eighteen inches high. The other was a red dog of about the same size, whose breed does not appear. One dog was about thirteen months old, and the other, seventeen or eighteen months old. Both dogs were bred by defendant on the premises, and had always been kept there.

The plaintiff's intestate, at the time of his death, lived at No. 245 East One Hundred and Fiftieth street, and was playing with some other children in the yard in the rear of No. 235 East One Hundred and Fiftieth street, which adjoined the yard of the vacant house, No. 234 East One Hundred and Fifty-first street. While engaged at play, one of the boys threw a small hoop over the fence into the back yard of the vacant premises, No. 234 East One Hundred and Fifty-first street. Plaintiff's intestate climbed over the dividing fence, recovered the hoop, and was climbing back over the fence when the dogs attacked him, dragged him from the fence down into the yard and proceeded to mangle him, or, as one of the witnesses described it, " to chew him up." The viciousness and ferocity of the attack is evidenced by the fact that, although neighbors came to the scene and endeavored to drive the dogs away by throwing stones at them, the dogs kept up their

attack upon the boy, who was lying upon the ground, and were still biting and tearing out the boy's intestines when, after the lapse of some time, a policeman, who had been summoned from the street, arrived and shot one of the dogs and drove the other away. The boy was removed in an ambulance and died on the following day.

There can be no question that the jury was warranted in finding that the dogs were of a vicious and ferocious disposition. That was proved by the nature of the attack and the ferocity with which it was kept up until the arrival of the policeman. There was also evidence which warranted the jury in finding that the attack was not an exceptional and sudden outburst of viciousness, for there was testimony which, while not entirely convincing in quality, showed, if believed, that the dogs had previously attacked and bitten another boy.

The defendant contends that there is no sufficient evidence to warrant a finding either that the defendant knew that the dogs were of a vicious and ferocious disposition or that he should have known such fact. If the defendant either knew or should have known that the dogs were vicious, it was not necessary to prove that they had previously attacked any one. The popular theory that " every dog is entitled to one bite " finds no support in the decisions of the courts of this State (*Rider* v. *White*, 65 N. Y. 54), but, as above pointed out, there was evidence which, if believed, showed a previous attack. The fact that the defendant was not shown to have had any personal knowledge of the previous attack is of no importance. (*Turner* v. *Craighead*, 83 Hun, 112; affd., 155 N. Y. 631; *Brice* v. *Bauer*, 108 id. 428.) Evidence of a previous attack is received for a twofold purpose, one, to show viciousness (which was sufficiently proved by the attack itself in this case), and the other, to show notice, upon the theory that one who permits a condition of danger to exist for a considerable period of time in connection with property under his control is chargeable with notice because, in the exercise of ordinary care, he should have discovered and remedied the danger.

In this case the record discloses evidence which warranted a finding that the defendant knew that the dogs were of

First Department, March, 1919. [Vol. 186.

·a vicious disposition and that, irrespective of actual knowledge, he should have known that they were liable to attack persons venturing upon the premises that they were guarding. As to actual knowledge, it appeared that the defendant bred these dogs and had had them under his immediate observation for more than a year. As they were in fact extraordinarily ·ferocious, as shown by the shocking nature of their persistent attack upon this boy, it is only reasonable to infer that one who had bred them and brought them up would have discovered their disposition. In the next place, the defendant testified that if he had not known that the fence was high enough to keep the dogs in he " would have muzzled them or tied them." This testimony leads to the inference that the defendant knew that the dogs, if at large, were liable to attack persons. Again, the jury was well warranted in finding that the defendant knew that the dogs would attack persons coming on the premises from the fact that the defendant employed them as watch dogs. In *Brice* v. *Bauer* (108 N. Y. 428) Judge DANFORTH said: " Again, if the dog was the defendant's dog, the very purpose for which the defendant kept him charges him with knowledge of his character, and he is therefore chargeable with negligently keeping him, although it had not appeared that he had actually bitten another person before he bit the plaintiff. (*Worth* v. *Gilling*, 2 Com. Pl. [L. R.] 1.) In that case the court say, ' the defendants admitted that the dog was purchased for the protection of their premises. Unless of a fierce nature he would hardly have been useful for that purpose.' In *Buckley* v. *Leonard* (4 Denio, 500), an action for damages for injuries inflicted by a dog, it appeared among other things ' that for the most part the defendant had kept his dog chained up in the daytime and in his store nights,' and the defendant having had a verdict, it was reversed, the court saying, aside from proof that the defendant had notice of the dog's disposition, ' the fact that he usually in the daytime kept him confined, and in the night kept him in his store, is strong evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to go at large.' "

*Brice* v. ·*Bauer* was followed in *Hahnke* v. *Friederich* (140 N. Y. 224), where the court said: " The ·testimony tended

to show that the defendant procured and kept the dog to guard his barn and the property therein, and that he considered it necessary to chain and muzzle him. The purpose for which he was kept and the manner in which the owner was accustomed to restrain him were circumstances which, with the other testimony in the case, authorized an inference by the jury of knowledge by the defendant of the vicious propensities of the animal. (*Brice* v. *Bauer*, 108 N. Y. 428; *Lynch* v. *McNally*, 73 id. 347; *Rider* v. *White*, 65 id. 54; *Jacoby* v. *Ockerhausen*, 59 Hun, 619; S. C., affd., 129 N. Y. 649.)

" When a person keeps a dog for the purpose of guarding his property against trespassers or criminals it is not unreasonable to infer knowledge on his part of the propensity of the dog to attack and bite mankind, and negligence in allowing him to be at large. The defendant it is true had the dog only about a month before the plaintiff was injured, but there is testimony in the case that during that time he attacked and bit at least one person, knowledge of which was communicated to him. We cannot, therefore, say that there was no evidence for the jury. It was, we think, a fair question of fact whether the defendant knew that the dog was accustomed or liable to attack people, and if he did he was chargeable with negligence in permitting him to be at large and liable for the injury committed."

In *Laguttuta* v. *Chisolm* (65 App. Div. 326) this court, per INGRAHAM, J., stated: " There was sufficient to justify the jury in finding that Wilson had knowledge that this dog was a dangerous animal. As was said in *Brice* v. *Bauer* (108 N. Y. 432), ' the very purpose for which the defendant kept him [the dog] charges him with knowledge of his character, and he is therefore chargeable with negligently keeping him, although it had not appeared that he had actually bitten another person before he bit the plaintiff; ' and the court cited with approval what was said in *Buckley* v. *Leonard* (4 Den. 500) that aside from proof that the defendant had notice of the dog's disposition, ' the fact that he usually in the daytime kept him confined, and in the night kept him in his store, is strong evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to

be at large.' It would seem, therefore, that the judgment directing a verdict in favor of the defendant Wilson should be reversed."

While it appears in each of the foregoing cases that there was some evidence in the case other than the fact that the dog was kept as a watch dog, such evidence was slight in *Brice* v. *Bauer* and in *Hahnke* v. *Friederich,* whereas in this case there is not only the testimony concerning the previous attack, but the fact that the defendant bred these dogs and declared that he would have muzzled them if he had thought they could get out of the yard. Even if it be held that the purpose for which the dogs were kept is not alone sufficient evidence to charge the defendant with knowledge of their disposition, these cases are undoubtedly authority for holding that it is some evidence.

In addition to the evidence warranting an inference of actual knowledge, the record discloses evidence warranting a finding that the defendant, in the exercise of ordinary care, should have discovered the vicious disposition of the dogs. The defendant's aunt, who lived in the same house with the defendant, evidently knew that the dogs were liable to bite, for she testified that when she saw the boy going over the fence she called out, " Boy, get away from there, because there are the dogs." She further testified, " then I called the people to warn them." The son of this witness also evidently knew some months previous to the attack that the dogs were vicious, for he testified that on an occasion when another boy started to get over the fence to get a ball in the yard where the dogs were sleeping, he warned the boy not to do so because the dogs were there. If these people, living in the same house with the defendant, knew the disposition of the dogs, the jury was warranted in finding that the defendant, who bred them and brought them up, should have known their disposition.

These considerations lead me to the conclusion that the evidence supports the verdict and that the judgment and order should be affirmed, with costs.

CLARKE, P. J., and PAGE, J., concurred; LAUGHLIN and MERRELL, JJ., dissented.

LAUGHLIN, J. (dissenting): .

I am of opinion that the rule still obtains in this jurisdiction that notice, either actual or constructive, to the owner that the dog was vicious is essential to warrant a recovery against the owner for an attack upon a human being by the dog, and that there is no evidence of such notice prior to the time the dogs attacked the decedent; and I, therefore, vote for reversal and a new trial.

MERRELL, J., concurred.

Judgment and order affirmed, with costs.