JAMES CONROY, Respondent, v. GUS SPERL, Appellant.

*Animals — action to recover for injuries suffered when plaintiff was bitten by defendant's dog — judgment in favor of plaintiff reversed because of lack of proof of scienter on part of defendant of vicious propensity of dog.*

Appeal from a judgment of the County Court of Bronx county in favor of the plaintiff, entered in the Bronx county clerk's office August 3, 1922, upon the verdict of a jury for $400, and also from an order entered July 1, 1922, denying a motion to set aside the verdict and for a new trial.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event, on the ground that there was no proof of scienter on the part of defendant of vicious propensity of the dog. Present — Clarke, P. J., Dowling, Finch, McAvoy and Martin, J.; Finch and McAvoy, JJ., dissenting.

FINCH, J. (dissenting): While walking on the sidewalk of a public street plaintiff, without any provocation whatever, suddenly was attacked and bitten on the right leg by an Airedale dog, alleged to be owned, controlled or harbored by defendant, and was so severely injured that he was unable to walk, and for a month was confined to the house. The defendant, appellant, contends, *first*, that the dog in question was not sufficiently identified as the dog making the attack, and *secondly*, that knowledge of the vicious propensity of the dog was not sufficiently brought home to the defendant. In reference to the first point, the dog was a large male Airedale, distinctively marked. Plaintiff had seen this dog together with two other dogs kept by the defendant on previous occasions in the defendant's café and in his yard. He went with a policeman to the defendant's place and two dogs were first brought in, which plaintiff failed to identify; the dog in question was then brought in and plaintiff at once positively identified him. The dog started towards him and plaintiff seized a bottle with which to protect himself. Plaintiff testified: " Q. This dog that grabbed you — had you seen that on the premises and in the saloon of August Sperl? A. I did. * * * Q. About how many occasions? A. Well, several occasions. I have been there several times. Q. And you had seen him inside the premises? A. Yes, and in the yard. Q. And in the café? A. Yes. Q. And on the street? A. Yes." The defendant claimed the dog was inside his bedroom at the time the plaintiff was bitten. The plaintiff was bitten between nine and ten o'clock in the morning. The defendant testified that the café was opened at nine o'clock in the morning and the dogs regularly taken out by his wife or adopted daughter between eight-thirty and nine-thirty, except this one particular morning upon which plaintiff was bitten, when the dogs were taken out later. In this the defendant is corroborated by his wife. Because of the obvious interest of both of these witnesses, the jury were at liberty to disregard this testimony, and the finding that the plaintiff was bitten by the defendant's dog was clearly supported by the evidence. In reference to the question of scienter, there is some evidence which might sustain the finding of the jury. The defendant admitted upon cross-examination that he saw one Freeborn bitten in the ankle in the same way as the plaintiff, but the defendant claimed that Freeborn was intoxicated and in company with another man had started to climb the fence and further upon this trial, although not mentioned upon a previous trial, that the dog which bit Freeborn was named Boscoe, which

was the father of the dog that plaintiff testified attacked him.    The defendant's
wife, however, testified that one of the dogs which they owned now was named
Boscoe.    There was proof that several other persons had been bitten by the
defendant's dogs, although it was not shown which of the dogs did the biting.
The dogs, however, including the dog in question, were all kept together.    This
same dog twice attacked a street cleaner, but there is no evidence that this was
brought to the attention of the defendant.    A witness also testified that during
a rainstorm, when he had ventured on the porch of the defendant, a dog had put
his nose through the screen door and bitten the witness' knee and injured his
clothing.    The defendant admitted making a payment to this witness but his
explanation was that it was because he had torn his clothing on a nail in the
screen.    The defendant also denied that his dog had bitten a boy, his explanation
being that the boy had been playing with a ball and that the dog had grabbed the
ball and scratched the boy with his paw.    Even if it is held that scienter was not
sufficiently proven, nevertheless, the attack upon this plaintiff was so unprovoked
that its very nature, coupled with the other attacks of which the defendant claims
that he had no notice, all tend to show that the dog was inherently vicious, of
which fact the owner should have been aware.    As was said in Perrotta v. Picciano
(186 App. Div. 781, 783): " If the defendant either knew or should have known
that the dogs were vicious, it was not necessary to prove that they had previously
attacked any one.    The popular theory that ' every dog is entitled to one bite '
finds no support in the decisions of the courts of this State."    Moreover, the
action further is predicated on the defendant's negligence in permitting the dog
at large unmuzzled, in violation of a city ordinance. (Sanitary Code, art. 2,
§ 17.)*    This ordinance has been held to have been designed for the security of
life and health.    (People ex rel. Knoblauch v. Warden, etc., 216 N. Y. 154.)    As
a citizen, plaintiff was entitled to the protection of this ordinance, and had it been
observed, he could not have been injured.    He, therefore, has a cause of action
irrespective of any question of scienter, since the defendant violated the ordinance
at the risk of the consequences of such violation.    As was said in Kavanagh v.
N. Y., O. & W. R. Co. (196 App. Div. 384; affd., 233 N. Y. 597): " Where the
Legislature of the State or the legislative body of a municipal corporation, having
in view the public safety, or the safety of the individual, commands or forbids
the doing of a particular act, the failure to do or refrain from doing the act
commanded or prohibited, as the case may be, is negligence per se."    See, also,
Buchanan v. Stout (139 App. Div. 204), where although the decision may be
sustained upon another ground, yet in respect to the violation of this particular
ordinance, Mr. Justice Jenks, writing for the court, said: " * * * The defend-
ant had taken his dogs into the public street of the city of New York, unmuzzled
and not led, against a city ordinance that was read in evidence, and, there-
fore, there was evidence of his negligence shown by his violation thereof."
When the plaintiff showed that he was attacked by an unmuzzled dog owned
by the defendant, on a public street, he made out a prima facie case of a vio-
lation of the ordinance above mentioned and cast on the defendant the burden
of rebutting the presumption of negligence thus arising.    In this connection it is
further to be noted that the plaintiff testified that he had seen the defendant's

* See Code of Ordinances of City of New York, chap. 20, art. 2, § 17.— [REP.

dogs, including the dog that attacked him, on the streets on numerous occasions, and that they never were muzzled. When the defendant attempted to meet this by testifying that although the dogs were taken out every morning by his wife or adopted daughter at about the same time in the morning that the plaintiff was bitten, yet that on this particular morning, the dogs were taken out at a later time and were always muzzled; nevertheless, the jury were at liberty to believe the testimony of the plaintiff and to disbelieve the stories told by the defendant and his wife, not only because of their inherent improbability, but also because of the interest of each of the witnesses. The violation of this ordinance by the defendant was thus evidence from which the jury could properly find that the negligence of the defendant was the proximate cause of the injury to the plaintiff. It follows that the judgment and order should be affirmed, with costs.