**DAUBER v. BOYAJIAN et al.**

No. 208.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1933.

Louis H. Pink and Pink & McDonough, all of Brooklyn, N. Y., for defendants-appellants.

Jeremiah A. O'Leary, of New York City, for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is a citizen of Pennsylvania and the defendants are citizens of New York. Diversity is the sole ground of jurisdiction.

Simon Boyajian is the father of Jack Boyajian. Simon owned a small factory

building in Long Island City, N. Y., part of which he rented to a corporation, called J. Mazlum Company, for the manufacture of hosiery. James Mazlum, the president, was Simon's son-in-law. Simon worked for the corporation as fireman, repair man, and janitor. Simon's house, in which he lived, was across a yard from the factory building. In this house Mazlum, his wife and two children and Jack and his wife also lived. Jack was a taxicab driver with no present interest in the hosiery company or the building in which it was located. He owned a German police dog about 5 years old that he had had since it was a puppy. This dog was permitted to run about the Boyajian house and yard, and was, at the request of Mazlum and with the consent of Jack, put by Simon each night in the boiler room in the cellar of the factory to act as a watch dog.

The plaintiff was employed by Mazlum & Co. as a hosiery boarder. At about 11 o'clock in the evening on October 23, 1930, while he was at work in the factory, he heard a dog growl behind him and immediately after that Jack's police dog bit him severely in the calf of his right leg. Casper Boyajian, a fellow employee who was the only other person present, succeeded in getting the dog away from the plaintiff. Casper testified that he had shortly before at the plaintiff's request brought the dog up from the cellar. The plaintiff denied that he had made any such request or knew that the dog was present until he heard the growl. He further testified that he had seen Simon in the factory a few minutes earlier, and that Simon had left open the door leading from the factory into the yard and had left open another door leading from the yard into the cellar where the dog was kept. The plaintiff also testified that Simon had warned him the night he began work for Mazlum & Co. as follows: "Mr. Boyajian took me over to a window in the factory and he showed me a cord and he says to me, 'If any time during the night you need any steam you pull that cord. That cord is connected to a bell inside of my home, and I will come out, I will make steam for you, no matter what time of night it is.' He says, 'Don't you go down into that cellar or around that dog, because it is a German police dog and he will tear you to pieces.'" There was no evidence that the dog had ever attacked anybody before he bit the plaintiff. There was some testimony to the effect that at times he was tied up when in the cellar.

By an exception to the denial of a motion to dismiss and by exceptions to the charge, the defendants question the sufficiency of the evidence to take the case to the jury both as to the viciousness of the dog and the scienter of the defendants. Furthermore it is claimed that Simon is not liable since he did not own the dog nor, as a matter of law, harbor it.

In disposing of the claim that Simon did not harbor this dog, it must be borne in mind that he permitted it to be kept in the house in which he lived. It is true that his son Jack who owned the dog lived there too, and the evidence discloses little about the premises, but we think enough appears to make it reasonably plain that these people all lived together with Simon in control of his house. This is enough to show that he harbored the dog. In Quilty v. Battie et al., 135 N. Y. 201, 32 N. E. 47, 17 L. R. A. 521, it was held that a wife harbored a dog owned by her husband which she permitted to be kept in a house belonging to her in which she lived with her husband. Here a father instead of a wife owned the house and a son instead of a husband owned the dog, but in their legal aspects, so far as harboring is concerned, the situations are similar. See, also, Duval v. Barnaby, 75 App. Div. 154, 77 N. Y. S. 337; Clark v. Disbrow, 77 App. Div. 647, 79 N. Y. S. 126; Leonard v. Donoghue, 87 App. Div. 104, 84 N. Y. S. 60.

The more generally accepted rule is that the liability of one for injuries caused by a dog he owns or harbors and knows to be vicious is absolute. And we take that to have the approval of the Supreme Court. Congress & E. Spring Co. v. Edgar, 99 U. S. 645; 25 L. Ed. 487. It is so in New York. As put by Gray, J., in Molloy v. Starin, 191 N. Y. 21, 83 N. E. 588, 589, 16 L. R. A. (N. S.) 445, 14 Ann. Cas. 57: "This rule of liability, I apprehend, is predicated upon the wrongful and unjustifiable conduct of the owner in keeping an animal of a vicious and therefore dangerous nature. If it is not securely confined, it is plainly a public nuisance, and security must be assured under all circumstances. The gravamen of the action in such cases is the keeping of the animal, with knowledge of its propensities, and, if it does some mischief, negligence is not, strictly speaking, an element of the owner's liability. There is, perhaps, a presumption juris et de jure of negligence based upon the keeping, and in that sense only an action would rest upon negligence. Card v. Case, 5 M. G. & S. 622. * * * See Muller v. McKesson, 73 N. Y. 195, 29 Am. Rep. 123; Lynch v. McNally, 73 N. Y. 349; Kelly v. Tilton [3 Keyes (* 42 N. Y.) 263], 2 Abb. Dec. 495; Van Leuven

·1004

v. Lyke, 1 N. Y. 516, 49 Am. Dec. 346; Spring Co. v. Edgar, 99 U. S. 645, 25 L. Ed. 487; May v. Burdett, 9 Ad. & El. (N. S.) 101."

█ The evidence that Simon told the plaintiff that the dog would tear him to pieces if he failed to keep away from it was uncontradicted and was certainly enough to warrant the jury in finding that Simon knew the dog was vicious. Besides this, it appeared that it was a police dog (see Carlisle v. Cassasa, 234 App. Div. 112, 115, 254 N. Y. S. 221) and was kept as a watch dog. Compare Hahnke v. Friederich, 140 N. Y. 224, 35 N. E. 487. Although this statement of Simon was not itself evidence against Jack as to the nature of the dog, since he apparently did not know it had been made, Jack did know what Simon was doing with the dog in keeping it in the factory cellar as a watch dog, and exercised his control as owner of the dog during this time through Simon. This knowledge of the viciousness of the dog which Simon was shown to have had was imputable to Jack for whom Simon had control of the dog. Brice v. Bauer, 108 N. Y. 428, 15 N. E. 695, 2 Am. St. Rep. 454. But the jury was not confined to that. The fact that Jack had owned this dog five years, coupled with his knowledge that it was a police dog used to guard the factory cellar, was some evidence that he knew the nature of his dog. He is to be charged with knowing what he should have known in that regard. Perrotta v. Picciano, 186 App. Div. 781, 175 N. Y. S. 16. And the facts proved were sufficient to take this to the jury. Hahnke v. Friederich, supra. The case of Prince v. Fried, 194 App. Div. 282, 184 N. Y. S. 873, serves to show that evidence that a dog is kept as a watch dog, that a sign "Beware of the dog" is maintained on the premises where he is kept, and that he had snapped once or twice in the month preceding his attack upon the plaintiff, may not be sufficient, or at least was not there held sufficient, to enable a jury to find that the dog was known to be vicious. But the decision in that case seems to have been put upon the precise facts as applied to that dog rather than to have been an intentional departure from the general rule as to proof of scienter in dealing with liability for injuries inflicted by a vicious dog.

█ We have no occasion to consider whether Mazlum & Co. was also liable, for at most it was a joint tort-feasor and neither a party nor a necessary party to this action.

Judgment affirmed.