BESSIE M. CARLISLE, Appellant, *v.* CATHERINE CASSASA and Another, Respondents.

JOSEPH M. CARLISLE, Appellant, *v.* CATHERINE CASSASA and Another, Respondents.

First Department, December 24, 1931.

*James E. Duross* of counsel [*Nelson A. Ball, Jr.*, with him on the brief], for the appellants.

*Hyman I. Fischbach* of counsel [*Jeannette M. Fox* with him on the brief; attorney], for the respondents.

MERRELL, J.  The plaintiff Bessie M. Carlisle brought action to recover for personal injuries which she sustained from the bite of a dog owned by defendant Catherine Cassasa and harbored by her brother, the defendant Charles Cassasa.  The plaintiff Joseph M. Carlisle brought a separate action against said defendants to recover for loss of services and expenses incurred in the surgical treatment of his wife, the plaintiff in the first action, and other expenses resulting from the injuries which his wife sustained.  The actions, by stipulation, were tried together.

The plaintiff Bessie M. Carlisle resided with her husband at 416 Convent avenue, New York city, in a house owned by plaintiffs and in which they had resided for about twenty years.  In the rear of the house was a yard sixteen by eighteen feet in dimension.  Adjacent to the premises occupied by plaintiffs to the south, at 414 Convent avenue, was a house which, prior to the time when plaintiff's injuries were inflicted, had been occupied by the defendant Charles Cassasa and two or three of his sisters as a place of residence.  In the rear of the house occupied by the defendants there was also a yard sixteen by eighteen feet in dimension.  Between the yard in the rear of the plaintiffs' premises and that of the defendants there was a tight, board fence seven feet nine inches in height, the boards of the fence standing perpendicularly.  On July 7, 1927, at about fifteen minutes before noon, the plaintiff Bessie M. Carlisle had occasion to go into the yard in the rear of plaintiffs' house for the purpose of adjusting some bath rugs which had been incorrectly hung by the plaintiffs' maid.  The plaintiff Bessie M. Carlisle testified that as soon as she had gone into her yard a huge police dog, owned and harbored by defendants, began to bark furiously and to paw against the tight, board fence separating the two yards, and that of a sudden two of the boards of the fence gave way and the dog rushed into plaintiffs' yard, showing its white teeth and with blazing eyes attacked plaintiff, grabbing her by the calf of the leg.  When the dog first broke into the yard, plaintiff, realizing her danger, started to run to the door of her house with a view of escaping the dog's attack.  She was unable

to reach the door before the dog grabbed her by the calf of the leg, and when she screamed momentarily desisted, and the plaintiff was pulled into her house by the maid. As she went in, the dog started to spring a second time, but was prevented from further attacking plaintiff by the closing of the screen and outer door in the dog's face. Plaintiff, after entering the house, momentarily sat down, bleeding profusely from her lacerated leg. The testimony is that her slipper was filled with blood and pools of blood were upon the floor of the kitchen, and that the blood gushed from her leg as she ascended the stairs to her room. Plaintiff was treated by two or three doctors, giving her first aid. As the result of her injuries plaintiff was confined to her bed and required daily visits from her family doctor, with another specialist called in consultation, for a period of seven weeks. An infection of plaintiff's leg developed and drain tubes were inserted and plaintiff's wound did not heal until November 1, 1927, or nearly four months after she was injured. The testimony shows that plaintiff was rendered extremely nervous and hysterical, and suffered from insomnia and lost much in weight. Her condition was such that her attending physician advised an ocean voyage, and the latter part of August, in company with her daughter, she took an ocean trip to Quebec and return, the daughter dressing her wound on the trip. During this trip plaintiff was unable to walk save with the assistance of her daughter and a cane. Plaintiffs' evidence clearly shows that plaintiff received most serious injuries, and that her husband, the plaintiff Joseph M. Carlisle, expended in obtaining medical and surgical aid and in defraying expenses of plaintiff's ocean trip and otherwise, over $1,300. At the close of plaintiffs' evidence the defendants moved to dismiss the complaints upon the ground that the prior vicious propensities of the dog had not been shown, and that there was no evidence of *scienter* on the part of the defendants. Decision upon such motion of counsel for defendants was reserved by the justice presiding at the trial, and thereupon the defendants rested without offering any proof, and renewed their motion for dismissal of the complaints upon the grounds stated, which motion was granted, and thereon the judgments appealed from were entered. The learned justice presiding at the trial held that the plaintiffs had failed to prove the prior vicious propensities of the defendants' dog and had failed to prove facts showing that the defendants knew or had cause to know that their dog was vicious.

We are of the opinion that the evidence was sufficient to justify the jury in finding that the defendants' dog, prior to the accident, was vicious, and that, under the proven facts, the defendants knew or should have known of the vicious propensities of their

dog. The dog in question was what was known as a police dog, and was a cross between a collie and a wolf. In its physical proportions it was described by the witnesses as a "huge" dog. Plaintiffs also testified that the dog was about two feet in height at the shoulders and weighed seventy-five or eighty pounds. It is a matter of such common knowledge that the court can almost take judicial knowledge of the fact that police dogs are, by nature, vicious, inheriting the wild and untamed characteristics of their wolf ancestors.

Dr. James E. Assing, called as a witness in behalf of plaintiffs, testified that he was a veterinarian and had been in the employ of the health department of the city for twenty-one years, and that among his duties in the health department was the examination of dogs, and that he had been engaged in that business for some thirty-seven years, during which time he had examined from four thousand to five thousand dogs a year; that it was a part of his duty to file a report shortly after making an examination; that on July 9, 1927, two days after plaintiff Bessie M. Carlisle was bitten, he made an examination of defendants' dog, reading from the record, as: "Wolf, gray, police." The health department veterinarian was then asked as to whether or not he had examined the defendants' dog on July 9, 1927, for viciousness, but, upon objection of counsel for defendants, he was not permitted to answer. Plaintiffs' trial counsel then offered in evidence the veterinarian's report of the examination of the defendants' dog made on July 9, 1927, wherein the dog was described as "vicious." We are of the opinion that the court erred in denying plaintiffs an opportunity to show that the veterinarian made an examination of the dog as to its viciousness and in refusing to admit the veterinarian's report in evidence. We do not think the examination made by the veterinarian two days after the accident was too remote, and if the dog was then vicious, he was probably vicious at the time of his attack upon plaintiff.

Dennis J. Dowd, called as a witness in behalf of plaintiffs, testified that he was a patrolman in the police department of the city of New York, and that on July 7, 1927, he was assigned to the health department as a patrolman; that his duties were to investigate complaints that came to the health department with reference to dog cases, and that on July 8, 1927, the day following plaintiff's injuries, he made an investigation, which he filed in the department of health, as was his duty. Officer Dowd testified that he saw the dog which had attacked plaintiff at 414 Convent avenue on July 8, 1927, and looked at him. The court, under objection of counsel for defendants, refused to permit the officer to state as to

whether or not it was a part of his duty to make an examination to determine whether the dog was vicious or not, and under like objection was not permitted to state as to whether or not he had made a report in that particular case. A report under date of July 8, 1927, was identified by the witness as signed by him after visiting the premises at 414 Convent avenue. This report was offered in evidence by plaintiffs, and under objection of counsel for the defendants the report was excluded. This report was received for identification, and it thereby appears that the dog was described by Officer Dowd as " vicious." We think the court erroneously denied the plaintiffs the right to show the examination made by Patrolman Dowd concerning the viciousness of the dog on the day following the accident, and erroneously refused to receive said report in evidence.

In our opinion the evidence was ample to show that the defendants' dog was, in fact, vicious, and had been for so long a time prior to the injuries inflicted upon plaintiff that the defendants knew or should have known of the vicious propensities of their dog. The evidence shows that this dog, for three or more years, had been kept confined entirely in the back yard of the defendants' premises surrounded by the board fence seven feet nine inches in height, or within the defendants' house. There is no evidence that the dog was ever seen off the defendants' premises. Plaintiff Bessie M. Carlisle testified that whenever she raised a window of her house the defendants' dog would bark furiously and rush about the yard and claw the fence separating the defendants' yard from that of plaintiffs in an effort to gain access to the plaintiffs' premises; that the slightest noise would arouse the dog. The plaintiff Joseph M. Carlisle testified that he had frequently seen the defendants' dog, and that upon the least provocation he would bark furiously and rush about the yard with the hair upon his back raised. The very viciousness of the attack upon plaintiff Bessie M. Carlisle clearly demonstrates that the defendants' dog was of a vicious and ferocious disposition, and that the jury would have been justified in finding, from the circumstances attending the attack that was made upon plaintiff, that the dog was vicious and ferocious. (*Perrotta* v. *Picciano*, 186 App. Div. 781, 783.) In the case of *Muller* v. *McKesson* (73 N. Y. 195, 199) the Court of Appeals wrote: " It may be that in a certain sense an action against the owner for an injury by a vicious dog or other animal is based upon negligence; but such negligence consists not in the manner of keeping or confining the animal, or the care exercised in respect to confining him, but in the fact that he is ferocious and that the owner knows it, and proof that he is of a savage and ferocious

nature is equivalent to express notice." The evidence on the part of plaintiffs was that the breaking of the board fence by the dog was no new attempt on his part to gain access to plaintiffs' yard, and that on prior occasions, when aroused, he had been seen to try to claw down the fence and gain access to plaintiffs' yard. Almost immediately after plaintiff was bitten, the defendant Dr. Charles Cassasa called at plaintiffs' home and offered first aid treatment. On that occasion the defendant Charles Cassasa said to plaintiff: " I am very sorry, Mrs. Carlisle, that this happened. The dog is not mine. It is my sister's dog. I have wanted her to get rid of the dog and we should have done so." We think this statement by the defendant was sufficient to have justified the jury in finding that the dog was a vicious one, and that the defendants knew it was vicious and had contemplated getting rid of it.

John Freeman, called as a witness in behalf of plaintiffs, testified that for a year and a half or two years prior to the day when plaintiff's injuries were inflicted, he had been accustomed to deliver groceries at the home of the defendants at 414 Convent avenue; that it was his custom, when he called with groceries, to ring the bell, and that someone " answered the door," and that he would then hear the dog bark. Freeman then testified: " A maid would answer the door or whoever happened to be there, and she would say ' Wait till I put the dog away ' and I would bring the stuff in; or else, they took the stuff from me at the door." Counsel for the defendants moved to strike out what the witness had testified as to what the maid or whoever appeared had said, and the court granted such motion, with an exception to plaintiffs. We think the court erred in refusing to permit such testimony to stand. The court granted the motion to strike out the testimony on the ground that the maid or person was unidentified. Of course, the witness could not identify any particular person who had answered his call, more than to say that whenever he rang the bell he heard the dog bark, and whoever came to the door requested that he wait until the dog could be taken care of. Such request came from a person in charge of the premises, and we think clearly bound the defendants and indicated not only the viciousness of the dog but knowledge thereof on the part of the defendants. The grocery boy further testified that on some of the occasions one of the Cassasa sisters came to the door, the witness identifying one of the Misses Cassasa then in court.

We conclude that the evidence of the plaintiffs, undenied, was sufficient to justify the jury in finding that the defendants' dog was a vicious and ferocious animal, and that the defendants knew or should have known of the vicious propensities of their dog.

We, therefore, think that the court erred in dismissing the complaints upon the proofs, and that the judgments should be reversed and new trials granted, with costs to the plaintiffs-appellants against the defendants-respondents to abide the event.

FINCH, P. J., SHERMAN and TOWNLEY, JJ., concur; O'MALLEY, J., concurs in result.

In each case: Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.