■ SHIRLEY CARTER, Respondent, v METRO NORTH ASSOCIATES et al., Appellants. [680 NYS2d 239] —Order, Supreme Court, New York County (Lorraine Miller, J.), entered April 17, 1998, denying defendants' motion for summary judgment, and, upon searching the record, granting summary judgment to the plaintiff on the issue of liability, reversed, on the law, without costs, judgment in favor of plaintiff vacated, defendants' motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Before a pet owner, or the landlord of the building in which the pet lives, may be held strictly liable for an injury inflicted by the animal, the plaintiff must establish both (1) that the animal had vicious propensities *and* (2) that the defendant knew or should have known of the animal's propensities (*see, Vavosa v Stiles*, 220 AD2d 363; *Gibbs v Grenadier Realty Corp.*, 173 AD2d 171). Here, although it was established that plaintiff, a resident of a building owned and managed by the defendants, was attacked and bitten on the face by a pit bull owned by another tenant, there was no evidence indicating that the dog had ever attacked any other individual, or previously displayed any vicious behavior. The IAS Court erred in circumventing the requirement for evidence concerning the particular animal by purporting to take judicial notice of the vicious nature of the breed as a whole.

"A court may only apply judicial notice to matters 'of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof'" (*Dollas v Grace & Co.*, 225 AD2d 319, 320, quoting *Ecco High Frequency Corp. v Amtorg Trading Corp.*, 81 NYS2d 610, 617, *affd* 274 App Div 982). The fact at issue must be "'generalized knowledge as [is] so notorious as not to be the subject of reasonable dispute'" (*Abrevaya v Palace Theatre & Realty Co.*, 25 Misc 2d 600, 603 [Sup Ct, NY County 1960], quoting Model Code of Evidence rule 801).

On the subject of the propensities of pit bull terriers as a breed there are alternative opinions that preclude judicial notice such as was taken by the court. While many sources, including the authorities relied upon by the IAS Court, assert

the viciousness of pit bulls in general, numerous other experts suggest that, at most, pit bulls possess the *potential* to be trained to behave viciously (*see, e.g.*, Green, *It's Unfair to Categorize Any Dog Breed As A Biter*, Seattle Times, Aug. 17, 1997, at G5; Kuntz, *Word for Word/Rover Rage*, New York Times, June 7, 1998, section 4, at 7, col 1; Foote, *That is Not A Bad Dog—That's a Splendid Dog*, 23 Smithsonian Mag 60-71 [1992]).

Furthermore, scientific evidence more definitive than articles discussing the dogs' breeding history is necessary before it is established that pit bulls, merely by virtue of their genetic inheritance, are inherently vicious or unsuited for domestic living, such as, for instance, wolves and leopards would be (*but see, Plue v Lent*, 146 AD2d 968, 969 [3d Dept]). No statistical analysis is offered to demonstrate that a high percentage of the total number of pit bulls has engaged in violent incidents.

Even accepting that the evidentiary submissions created an issue of fact as to whether this particular animal had vicious propensities, none of the evidence supports a finding that the landlord had, or should have had, knowledge of any such propensities. In particular, the claimed admission of the dog's owner to the plaintiff immediately before the incident, that the dog had become aggravated due to children playing in the vicinity, provides no support for an inference that the landlord knew of such propensities. Nor does evidence that the landlord's agents knew of the dog's existence and presence in the building support the inferential leap to knowledge on the part of the landlord that the dog had vicious propensities.

The defendants' failure to enforce the "No Pets" provision of the lease cannot be characterized as a proximate cause of plaintiff's injuries. There is no causal connection between the lease violation and plaintiff's injuries, particularly in the absence of any demonstrated reliance on the lease clause by the plaintiff.

In response to defendants' motion, it was incumbent upon plaintiff to submit evidentiary proof sufficient to raise an issue of fact (*see, Machinery Funding Corp. v Loman Enters.*, 91 AD2d 528). In the absence of sufficient evidence to support plaintiff's claim, defendants' motion for summary judgment dismissing the complaint should have been granted. Concur—Tom, J. P., Andrias and Saxe, JJ.

Mazzarelli, J., dissents in a memorandum as follows: Plaintiff, a 72-year-old resident of defendants' apartment complex, seeks to hold defendants liable for personal injuries sustained during an attack by a pit bull owned by another ten-

ant. The standard leases issued by defendants prohibited tenants from keeping pets on the premises. Despite defendants' knowledge of this dog's presence, the lease provision was not enforced and the dog was permitted to remain.

The majority holds that summary judgment should have been granted to defendants because no evidence was produced by the plaintiff showing that this pit bull had vicious propensities, and because the IAS Court improperly took judicial notice of the alleged vicious propensities of pit bulls as a breed. While I agree that judicial notice was inappropriate under these circumstances, I believe that triable issues of fact exist as to whether this particular breed of dog has innate vicious propensities, and whether the defendants knew or should have known of this propensity so as to give rise to a duty to protect other residents from a dangerous animal on the premises. Accordingly, I would modify to deny summary judgment to both parties and remand for further proceedings.

Plaintiff was attacked on August 8, 1995, as she was walking along a path leading to one of the exit gates of defendants' apartment complex. As she neared the gate, she heard a dog's "vicious" barking, and then observed another tenant with a dog (a pit bull) on a leash. According to plaintiff's deposition testimony, the tenant told her that the dog was only behaving in this manner because the children playing in the immediate vicinity were "aggravating" it. Moments later, the pit bull leaped onto the plaintiff's body, biting her left cheek and cutting her left side. Plaintiff remembered feeling a heavy, muscular presence on her that knocked her into the security cabin. Plaintiff went to the emergency room, where she was treated for her injuries.

On the issue of defendants' knowledge, one of defendants' employees testified at his deposition that he had seen the dog being walked by the tenant's son on some five prior occasions, that the dog appeared to be "strong" from the manner in which it pulled on its leash and that he thought the dog had big teeth. Both this employee and another testified that they were aware that tenants were prohibited from keeping pets on the premises.

For a landlord to be held liable for an attack by a domestic animal kept by a tenant on its leased premises, it must be shown that the landlord had knowledge of the vicious propensities of the animal, and had control of the premises or other capability to remove or confine it (*Strunk v Zoltanski*, 62 NY2d 572, 575). "Vicious propensity" has been defined as "a natural inclination or habitual tendency to act in a manner that might

endanger the person or property of others" (1A NY PJI3d 2:220, at 876 [1998]; *see also, Dickson v McCoy*, 39 NY 400; *Appel v Charles Heinsohn, Inc.*, 91 AD2d 1029, 1030, *affd* 59 NY2d 741; *Shuffian v Garfola*, 9 AD2d 910). Whether the animal that caused the plaintiff's injuries had vicious propensities is a question for the jury (*Rider v White*, 65 NY 54; 1A NY PJI3d 2:220, *op. cit.,* at 876; 3 NY Jur 2d, Animals, § 156, at 635). In deciding this question, the jury may consider the nature and results of the attack on the plaintiff (*Lynch v Nacewicz*, 126 AD2d 708, 709; *Ford v Steindon*, 35 Misc 2d 339, 340), whether the animal had previously attacked other persons (*Lynch v Nacewicz, supra*), and the disposition of the animal toward persons coming near it (*Rider v White, supra*; 1A NY PJI3d 2:220, *op. cit.*). "Proof of a previous attack is unnecessary where other factors are indicative of knowledge [of an animal's vicious propensities] (*see, Perrotta v Picciano*, 186 App Div 781, 783)." (*Brophy v Columbia County Agric. Socy.*, 116 AD2d 873, 874.)

In the case at bar, the unprovoked and brutal nature of the attack on the plaintiff strongly suggests that this animal had vicious tendencies. This conclusion is supported by the owner's admission to the plaintiff, immediately before the attack, that the dog had become "aggravated" due to children playing in the vicinity. From these facts, it may be reasonably inferred that this dog posed an unreasonable risk of danger to other residents and passersby, and that defendants should have known of this risk (*see, Brophy v Columbia County Agric. Socy., supra,* at 875 [defendants' knowledge of horse's vicious propensities may be inferred from fact of defendants' maintenance and inspection of leased premises]).

Additionally, while the taking of judicial notice of the vicious propensities of pit bulls as a breed was improper (*see, Sorel v Iacobucci*, 221 AD2d 852, 853-854; *DeVaul v Carvigo, Inc.*, 138 AD2d 669, *lv denied* 72 NY2d 806; 3 NY Jur 2d, Animals, § 149, at 625), there is authority to support the proposition that a degree of viciousness may be implied solely by virtue of the specific breed involved (*see, Sorel v Iacobucci, supra* [while judicial notice is inappropriate, some degree of viciousness may be implied in case of German Shepherd]; *Carlisle v Cassasa*, 234 App Div 112 [court can almost take judicial knowledge of the fact that police dogs are, by nature, vicious, inheriting their wild and untamed characteristics from their wolf ancestors]; *see also, Strunk v Zoltanski, supra,* at 578, n 1 [Kaye, J., dissenting]; *Plue v Lent*, 146 AD2d 968).

As noted by the IAS Court, there is also case authority from other jurisdictions, as well as from non-legal sources, from

which the viciousness of pit bulls may be inferred. For example, several commentators have discussed how the selective breeding of pit bulls, including their long history of being bred for participation in the sport of dogfighting, has resulted in a "breed which is much more easily aroused than most dogs, incredibly tenacious, insensitive to pain, and that attacks without warning" (*Kensington Sq. II Ltd. Partnership v Perez*, 1995 Conn Super LEXIS 3102, *60 [Conn Super Ct, Oct. 17, 1995, Jones, J.], citing *Killer Genes Ate My Dog*, Economist [U.K.], June 1, 1991, at 83; *see also*, Comment, *The New Breed of Municipal Dog Control Laws: Are They Constitutional?*, 53 U Cin L Rev 1067 [1984]). Further, the physical characteristics of the breed (*see*, *State v Anderson*, 57 Ohio St 3d 168, 171-172, 566 NE2d 1224, 1227, *cert denied* 501 US 1257, quoting *Hearn v City of Overland Park*, 244 Kan 638, 643, 772 P2d 758, 762, *cert denied* 493 US 976 [" ' "short, squatty body with developed chest, shoulders and legs * * * muscular neck and a protruding jaw" ' "]), including their exceptionally strong bite (*see*, *Kensington Sq. II Ltd. Partnership v Perez*, *supra*, at *11, citing Sullivan, *Banning the Pit Bull: Why Breed-Specific Legislation is Constitutional*, 13 U Dayton L Rev 279, 283-284 [pit bulls can bite with a force of 1,800 to 2,000 pounds per square inch, or twice the force of the average Doberman Pinscher or German Shepherd]), have only reinforced their dangerous reputation.

Most significantly, the IAS Court cited authorities that relied on statistical studies to demonstrate that pit bulls have been responsible for a disproportionate number of canine attacks on human beings, and fatalities resulting from such attacks (*see*, *Kensington Sq. II Ltd. Partnership v Perez*, *supra*, at *4, citing *Pit Bulls—Dangerous or Misunderstood?*, 14 Current Mun Probs 497 [1988] [between 1983 and 1988, pit bulls were responsible for 21 of the nation's 29 fatal canine attacks]; *see also*, Sacks, *Dog Bite-Related Fatalities from 1979 through 1988*, 262 J of Am Med Assn 1489 [1989] [between 1979 and 1988 pit bulls were responsible for 42 of 101 (41.6%) of deaths by dog bites, which was three times the rate of German Shepherds]; *Dog Days Indeed*, New York Times, Dec. 10, 1997, at B 3 [pit bulls constitute only 4% of licensed dogs in New York City but account for one-third of reported dog bites]). Further, as a result of the alarming increase in fatal attacks by pit bulls, many jurisdictions have passed legislation banning or regulating the ownership of pit bulls (*see, e.g., State v Anderson, supra* [upholding the constitutionality of State statute providing that ownership of dog commonly known as "pit bull" is prima facie ownership of a vicious dog]; *Garcia v Vil-*

*lage of Tijeras*, 108 NM 116 , 767 P2d 355 [NM App 1988], *cert denied* 107 NM 785, 765 P2d 758 [upholding village ban on pit bulls]; *Hearn v City of Overland Park, supra* [unique public hazard created by presence of pit bulls within community justifies city's attempt to regulate this breed of dog]).

Collectively, the ferocious nature of the pit bull's attack on the plaintiff, the dog's behavior immediately prior to the attack and the historical and statistical evidence adduced with respect to a pit bull's tendency to behave in a vicious and potentially lethal manner, in my view, give rise to triable issues of fact as to this particular dog's vicious propensities and whether the defendants should have had knowledge thereof (*see, Abrevaya v Palace Theatre & Realty Co.*, 25 Misc 2d 600, 603 [Sup Ct, NY County 1960] [holding whether a rhesus monkey is a wild animal or a mild one, and if the former, whether it may be trained to tameness, is a question of fact]; *see also, Donchin v Guerrero*, 34 Cal App 4th 1832, 41 Cal Rptr 2d 192 [1995]; *Rosado-Carrasco v Wathne*, 1997 Conn Super LEXIS 2193 [Conn Super Ct, Aug. 12, 1997, Sullivan, J.]). Expert testimony could be offered at trial to supplement the authorities relied on by the motion court (*Abrevaya v Palace Theatre & Realty Co., supra; Donchin v Guerrero, supra*).

It must also be remembered that the particular setting of this attack was a densely populated apartment complex where numerous infants, children and elderly persons, all of whom are especially unable to defend themselves from a vicious dog attack, reside. Thus, the jury would also have to resolve the questions of whether the defendants took adequate precautions to protect third persons from an unreasonable risk on the premises (*see, Strunk v Zoltanski, supra*, at 576 [landlords as others must exercise reasonable care not to expose third persons to an unreasonable risk of harm]), whether the defendants had "control of the premises or other capability to remove or confine the animal" (*supra*, at 575), and whether the failure to enforce the lease provision prohibiting animals was the proximate cause of plaintiff's injuries. As none of the aforementioned questions may be answered in defendants' favor as a matter of law, I would modify as indicated and remand for further proceedings.