■ TARICE WALKER, an Infant, by His Natural Guardian, SANDRA VELILLA, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendants. [847 NYS2d 173]—

Order, Supreme Court, Bronx County (Paul Victor, J.), entered October 20, 2006 (brought up for review pursuant to CPLR 5517 [b] by the appeal from an order, same court and Justice, entered February 7, 2006), which, upon reargument, granted plaintiff's motion to "restore the action," and denied defendants-appellants' cross motion to dismiss the complaint, upon the condition that plaintiff's guardian appear for a hearing pursuant to General Municipal Law § 50-h within 30 days, modified, on the law, without costs, to deny plaintiff's motion to "restore the action" and grant defendants-appellants' cross motion to dismiss unconditionally, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

Plaintiff was born in June 1991 at a hospital operated by defendant New York City Health and Hospitals Corporation (NYCHHC). On May 10, 1996, plaintiff, with leave of court, served a notice of claim asserting that, as a result of the medical malpractice of NYCHHC's staff, plaintiff sustained personal injuries. On July 22, 1998, plaintiff commenced this medical malpractice action against defendants, and approximately one month later, the municipal defendants, appellants herein, answered the complaint and served demands for discovery and a bill of particulars.

In May 2000, plaintiff's permanent guardian sought the appointment of a guardian ad litem for plaintiff to protect his interests in this action. Supreme Court granted the motion to the extent of directing that a guardian ad litem would be appointed unless the permanent guardian appeared for a hearing pursuant to General Municipal Law § 50-h within 45 days of the entry of the order. While the permanent guardian did not comply with the order, it does not appear that a guardian ad litem was appointed.

On March 23, 2005, Supreme Court served on plaintiff's

counsel a CPLR 3216 demand requiring plaintiff to complete all outstanding disclosure and serve and file a note of issue within 90 days of the demand. The demand made plain that plaintiff's failure to comply with the demand could serve as a basis for dismissing the action. Plaintiff did not serve and file a note of issue within the 90-day period, and Supreme Court dismissed the action.

Approximately three months after the action was dismissed, plaintiff moved to "restore the action." Plaintiff's counsel asserted that he failed to comply with the CPLR 3216 demand because his calendar clerk failed to note the deadline. Counsel argued that the action should be restored because defendants would not be prejudiced if the motion was granted. Plaintiff submitted no evidence regarding the merits of his claims. In addition to opposing plaintiff's motion, defendants cross-moved to dismiss the complaint. Defendants argued, among other things, that plaintiff provided neither a reasonable excuse for his failure to comply with the CPLR 3216 demand nor a medical expert's affidavit evincing the merits of his claims. After receiving defendants' cross motion, plaintiff served a bill of particulars and a conclusory response to defendants' discovery demands, which had been served over seven years earlier.

Supreme Court summarily granted plaintiff's motion. The court subsequently granted defendants' motion for reargument to the extent of dismissing the action unless the permanent guardian appeared for a General Municipal Law § 50-h hearing.[1] This appeal by defendants ensued.

Plaintiff's motion to "restore the action" was in fact a motion to vacate the dismissal of the action. A motion to restore an action is necessary where a case is dismissed under CPLR 3404, the post-note of issue laxness dismissal statute (*see* Siegel, NY Prac § 376, at 632 [4th ed]). Since no note of issue was ever filed, Supreme Court dismissed the action under CPLR 3216 (*see Johnson v Minskoff & Sons*, 287 AD2d 233, 234 [2001], citing *Lopez v Imperial Delivery Serv.*, 282 AD2d 190 [2001], *lv dismissed* 96 NY2d 937 [2001]).

It is well settled that to vacate the dismissal of an action dismissed pursuant to CPLR 3216, a plaintiff must demonstrate both a reasonable excuse for the failure to comply with the 90-day demand and a meritorious cause of action (*Lopez*, 282 AD2d at 197; *see Rijo v McLaughlin*, 309 AD2d 716, 717 [2003]). Here, the conclusory and perfunctory claim of law office failure as-

---

1. Plaintiff's permanent guardian eventually did appear for a hearing under General Municipal Law § 50-h in December 2006, 15½ years after the alleged malpractice and 10½ years after the notice of claim was served.

serted by plaintiff's counsel does not constitute a reasonable excuse. The calender clerk of plaintiff's counsel's law firm merely averred that he obtained a copy of the CPLR 3216 demand and failed, due to "clerical error," to file the note of issue. Neither this affidavit nor any other evidence demonstrated a reasonable excuse for plaintiff's "extensive delays in prosecuting the action both before and after [the] demand" (*Garcia v Del Pacifico*, 299 AD2d 188 [2002]; *see Gavillan v City of New York*, 11 AD3d 217 [2004] [alleged excuse for failure to comply with CPLR 3216 demand—eviction proceedings pending against plaintiff's counsel—did not explain the pattern of delay over the course of the litigation]; *Campos v New York City Health & Hosps. Corp.*, 307 AD2d 785, 786 [2003] [pattern of delay relevant to determination of whether plaintiff's excuse for her default was reasonable]; *see also Ovchinnikov v Joyce Owners Corp.*, 43 AD3d 1124 [2007]).

Notably, the permanent guardian repeatedly failed to attend scheduled hearings under General Municipal Law § 50-h; plaintiff's counsel failed to ensure that a guardian ad litem was appointed for plaintiff; and plaintiff's counsel took seven years to respond to demands for a bill of particulars and discovery. In light of the persistent and lengthy delay of plaintiff's counsel and the permanent guardian in prosecuting this case, neither the perfunctory claim of law office failure, which only attempted to explain plaintiff's failure to comply with the 90-day demand, nor the portion of delay attributable to the permanent guardian's childcare and work responsibilities, nor both, is sufficient to constitute a *reasonable* excuse (*see generally Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514, 521 [2005] ["Supreme Court was of course correct in thinking it undesirable to punish plaintiffs for the failures of their counsel. But what is undesirable is sometimes also necessary, and it is often necessary . . . to hold parties responsible for their lawyers' failure to meet deadlines"]).

We also note that, under the particular facts of this case, plaintiff failed to demonstrate that his action has merit. Where, as here, the gravamen of the dismissed action is medical malpractice, a plaintiff must submit the affidavit of a medical expert to demonstrate the merits of the action (*Abelard v Interfaith Med. Ctr.*, 202 AD2d 615 [1994]; *see Marks v Kingsbrook Radiology*, 267 AD2d 151 [1999], citing *Mosberg v Elahi*, 80 NY2d 941 [1992]; *see also Burke v Klein*, 269 AD2d 348 [2000]). Plaintiff did not submit such an affidavit in support of his motion to "restore the action." Therefore, the papers before Supreme

Court were insufficient as a matter of law to demonstrate the merits of plaintiff's claims.

To avoid the consequences of this failure, plaintiff asserts that we should take judicial notice of the averments in a physician's affirmation, originally submitted by plaintiff in support of his 1995 motion for leave to serve a late notice of claim, that plaintiff included in papers filed in this Court in opposition to a motion by defendants for an enlargement of time to perfect this appeal. "Appellate review is limited to the record made on the motion and, absent matters that may be judicially noticed, new facts may not be injected at the appellate level" (*Regina v Friedman*, 272 AD2d 461, 462 [2000]; *see e.g. Broida v Bancroft*, 103 AD2d 88, 93 [1984]). While a court may take judicial notice of its records and files, it may "not take judicial notice of a 'fact' which [i]s controverted" (*Weinberg v Hillbrae Bldrs.*, 58 AD2d 546, 546 [1977] [court could not take judicial notice of process server's affidavit, which was in court file, where issue raised regarding whether service of summons was properly effected]). Thus, the mere presence of a document in a court file does not mean that judicial notice properly can be taken of any factual material asserted in the document (*Ptasznik v Schultz*, 247 AD2d 197 [1998]). As observed by the Second Department in *Ptasznik* (247 AD2d at 199): "Court files are often replete with letters, affidavits, legal briefs, privileged or confidential data, in camera materials, fingerprint records, probation reports, as well as depositions that may contain unredacted gossip and all manner of hearsay and opinion."

"A court may only apply judicial notice to matters of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof" (*Carter v Metro N. Assoc.*, 255 AD2d 251, 251 [1998] [internal quotation marks omitted]; *see* Prince, Richardson on Evidence § 2-201 [Farrell 11th ed]). Of course, the opinions of a physician regarding the efficacy of the medical treatment provided by defendants to plaintiff are not facts of common and general knowledge that are well established and authoritatively settled. Moreover, even if we could take judicial notice of the opinions of plaintiff's expert, we are not required to do so (*see* Prince, Richardson on Evidence § 2-202, at 30, quoting *Hunter v New York, Ontario & W. R.R. Co.*, 116 NY 615, 621 [1889] [" '(c)ourts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved, and the apparent justice of the case' "]). We should not be encouraging sloppy

practice by taking judicial notice of factual matters that a party unaccountably fails to supply before the nisi prius court (*see Sutton v Lavezzo*, 160 AD2d 292, 293 [1990] ["Plaintiffs . . . urge that a statement of the merits by the proper party was submitted in a related case . . . and judicial notice should have been taken of this statement. In moving to vacate a default, the burden is on the movant, and not the court, to produce admissible evidence showing merit to the underlying claim"]).[2] Concur—Tom, J.P., Friedman, Gonzalez and McGuire, JJ.

Saxe, J., dissents in a memorandum as follows: I would affirm the order restoring this action to the active pre-note calendar and denying defendants' cross motion to dismiss on the condition that plaintiff's guardian appear at a General Municipal Law § 50-h hearing.

The action was brought on behalf of a brain-damaged infant whose severe injures were allegedly caused by negligence in the course of his delivery in June 1991. The infant's grandmother was granted custody of him on December 21, 1992, and was declared his legal guardian on October 13, 1995. A motion for leave to file a late notice of claim was granted on May 2, 1996, and the action was commenced in 1998. The motion for late notice of claim was supported with the affirmation of a physician, who observed that the hospital records stated that at birth the infant was noted to be "foul smelling, with poor tone, and apneic," and who offered his opinion that the attending doctors departed from accepted medical practice by failing to timely diagnose clear signs of chorioamnionitis and to timely deliver the infant, allowing neonatal sepsis to develop, as a result of which the infant sustained severe psychomotor delay.

The section 50-h hearing was initially noticed for September 15, 1998; however, when the guardian appeared on that date with her attorney at the New York City Law Department's offices, she was informed that Corporation Counsel was not handling the matter. By letter dated October 21, 1998, defendants confirmed the guardian's request to reschedule the section 50-h hearing to October 27, 1998. Approximately two years passed without any hearing or any other steps being taken by either side, until on June 26, 2000, when counsel for the infant moved for the appointment of a public guardian for the limited purpose of representing the infant, counsel having been unable to secure the guardian's appearance at a hearing. Counsel

**2.** Plaintiff does not offer any excuse for his failure to submit the physician's affirmation, which he has possessed since 1995, on the motion to "restore the action." Rather, plaintiff merely states that the affirmation was not submitted "for reasons that are not clear f[ro]m the record."

explained in the application that the guardian was unable to take the necessary time off from work to appear for a hearing, as she was raising several grandchildren, two of whom required constant medical attention, and she was also working outside the home to support the family, and all her available paid personal days off were needed to cover the children's medical visits.

In April 2001, the IAS court granted the motion "to the extent that a guardian ad litem will be appointed unless the guardian . . . appears for a 50-H hearing at a time and place convenient for her within 45 days of entry of this order." The guardian did not appear for the hearing within the 45-day time period; however, no further steps were taken to secure the appointment of a guardian ad litem for the infant.

Nor were any other steps taken by either party until a conference on March 23, 2005, at which time a 90-day notice was issued directing plaintiff to file a note of issue on or before June 21, 2005. The calendar clerk for plaintiff's counsel asserts that he failed to file the notice of issue within the time prescribed; an attorney at the firm states that their office attempted to file a note of issue but it was rejected by the court clerk because discovery was not yet complete.

The matter was either marked off calendar or dismissed at a calendar call on June 21, 2005. Plaintiff moved to restore the action on or about October 3, 2005.

The court's decision to grant plaintiff's motion and restore the action to the pre-note of issue calendar was a provident exercise of discretion. Plaintiff established both a reasonable excuse for failing to comply with the 90-day notice to file the note of issue, and a meritorious cause of action (CPLR 3216 [e]; *see Grant v City of New York*, 17 AD3d 215, 216 [2005]).

It is self-evident that in more than one instance, counsel for plaintiff failed to take the steps necessary to ensure the protection of plaintiff's interests, the most recent being the failure to complete discovery and file a note of issue. Nevertheless, this clear case of law office failure establishes an acceptable excuse for the delay (*see Muriel v St. Barnabas Hosp.*, 3 AD3d 419 [2004]). While the excuse of law office failure may be insufficient where there is a pattern of neglect or delay on the plaintiff's part (*cf. Gavillan v City of New York*, 11 AD3d 217 [2004]), here the asserted pattern of delay amounts to the guardian's being overwhelmed with childcare and work responsibilities, counsel for *both* sides being inactive between the IAS court's order of April 2001 and the conference on March 23, 2005, and plaintiff's counsel failing to take action for some six

months following issuance of the 90-day notice. Under the circumstances, the portion of the delay attributable to the guardian is entirely understandable and excusable, and the portion attributable to law office failure should not defeat the rights of the injured infant on whose behalf the action was brought.

The requirement that plaintiff demonstrate a meritorious cause of action is satisfied by the previously submitted affirmation of plaintiff's medical expert, contained in the court's file. There is nothing inappropriate about taking judicial notice of the fact that the requisite affirmation had previously been obtained and submitted by plaintiff in the underlying proceeding, and that it was contained in the court's file. Doing so does not require the court to accept the accuracy of the opinion expressed in that affirmation; it merely recognizes that the court (and the opposing party) already has in its possession the requisite evidentiary materials. It is excessively punitive to deprive the injured infant plaintiff of his day in court because of counsel's failure to submit an affirmation to the court when that same affirmation is already in the court's possession, having been previously obtained and submitted.