Defendant established its entitlement to judgment as a matter of law in this action in which plaintiff alleges that she slipped and fell on a thin sheet of ice on the plaza in front of defendant’s building. Defendant submitted evidence — including testimony from the building’s security director and from the operations manager of third-party defendant Temco Service Industries, Inc., which provided cleaning and janitorial services — showing that defendant neither created nor had notice of the icy condition of the plaza.
Additionally, there is no evidence that defendant had actual or constructive notice of the icy condition (see Gordon v American Museum of Natural History, 67 NY2d 836 [1986]). The evidence submitted by defendant, including security logs, establishes that defendant’s employees routinely inspected the area where plaintiff fell, had conducted an inspection one hour prior to her accident, and did not observe any ice. In opposition and in support of her cross motion, plaintiff failed to provide evidence showing that the ice was discernable.
On appeal, plaintiff does not dispute defendant’s lack of actual notice of ice on the plaza, having conceded, at her examination before trial, that it was not visible. She testified that although conditions at about 9:30 a.m. were bright and clear, it “looked like a thin layer of ice that wasn’t noticeable enough for me to see it before I fell.” Thus, the record establishes that the hazardous condition was not “visible and apparent” so as to enable defendant’s employees to discover it and take remedial measures *467 (Gordon, 67 NY2d at 837; see Harrison v New York City Tr. Auth., 94 AD3d 512 [1st Dept 2012]).
Plaintiff argues that the only possible source of the water that froze on the plaza was a fountain situated in the area where she fell. She advances two theories: (1) that defendant created the icy condition by running its fountains in windy weather and notice need not be established or (2) that icing was a “recurrent condition” as a result of water being blown onto the plaza from the fountains so that defendant is properly chargeable with constructive notice of each subsequent recurrence of the condition. Plaintiff posits that the ice was the result of an “overspray condition” from the nearby fountain and submitted weather records reflecting an average wind speed of 13.5 miles an hour and wind gusts of up to 37 miles an hour during the course of the day on which the accident occurred (without indicating the specific time of the measured gusts). In addition, the weather records indicate that a trace of snow fell during each hourly interval between 4:00 a.m. and 8:00 a.m.
While there is a reflecting pool with a fountain located in the vicinity of the area where plaintiff fell, there is no evidence that the fountain was running. At her deposition, plaintiff stated, “I believe it was off,” and recalled only that the fountain basins had some water in them. Thus, plaintiff has failed to demonstrate that defendant caused the icy condition.
As to plaintiff’s alternative theory, nothing in the record establishes that water from the fountains was routinely deposited on the plaza to support her claim that this was a recurring condition. Nor does she establish the particular weather necessary to create the alleged icy condition. As depicted in the record, the reflecting pools are recessed below the level of the plaza. Each fountain consists of an array of sixteen water outlets, situated in the center of the pool, which elevate water to a modest height of perhaps one foot. Plaintiff s opposing papers fail to describe the mechanism by which water would be propelled from the fountain onto the plaza’s surface, even assuming that the fountain was running. Specifically, there is no proof of the wind speed required. Thus, her theory presents an intriguing problem in fluid dynamics (windage) well beyond the knowledge and experience of the average jurist, requiring expert testimony to support such a hypothesis (see Carter v Metro N Assoc., 255 AD2d 251 [1st Dept 1998]; Ecco High Frequency Corp. v Amtorg Trading Corp., 81 NYS2d 610, 617 [1948]). In sum, even assuming that “overspray” from the fountains was a recurring condition, as plaintiff contends, there is no evidence regarding the weather conditions that might *468 cause this effect and, arguably, put defendant on notice that icing was likely to occur.
Finally, plaintiffs assertion that the fountain must have been the source of the water on the plaza ignores the evidence contained in the weather records for the date — a trace of snow fell during each hour between 4:00 a.m. and 8:00 a.m. that morning. Plaintiffs claim is based on sheer surmise — that defendant’s fountain was operating, that certain weather conditions can cause water to be blown onto the plaza, that conditions on the morning of her accident were sufficient to cause water to accumulate on the plaza, where it froze, and that defendant should have known that the weather conditions that morning would cause an icy condition requiring it to take preventive action (Bernstein v City of New York, 69 NY2d 1020, 1021-1022 [1987]).
Since defendant’s purported knowledge of the hazardous condition is supported only by speculation, summary judgment is warranted (see Acevedo v York Intl. Corp., 31 AD3d 255, 256 [1st Dept 2006], lv denied 8 NY3d 803 [2007]).
We have considered plaintiffs remaining arguments and find them unavailing. Concur — Tom, J.E, Friedman and Freedman, JJ.
Feinman, J., dissents in part in a memorandum as follows: I respectfully dissent in part because defendant failed to establish a prima facie entitlement to summary judgment. Although I agree with the majority that the branch of plaintiffs cross motion which sought summary judgment was properly denied, I do so because the cross motion was untimely filed and should not have been considered (see Brill v City of New York, 2 NY3d 648 [2004]; Kershaw v Hospital for Special Surgery, 114 AD3d 75 [1st Dept 2013]).
Plaintiff alleges that she was injured on Saturday, February 6, 2010, at about 9:30 a.m., when, after taking three or four steps on the plaza in front of defendant’s building known as the GM building at 767 Fifth Avenue,* she slipped and fell on a thin sheet of ice about 10 feet from the plaza’s south fountain. She then realized that the “area closest to the fountain,” consisting of approximately four to six large granite squares, was one “continuous glaze of ice.” There were no warning signs or protective barricades. She did not recall whether the fountain was running but thought it was not; she remembered that the fountain’s pool was “full.” The weather that morning was dry, cold and very windy.
*469 Defendant’s witness, Kevin Buell, the building manager’s security director, and a witness from the third-party defendant cleaning and janitorial services company, Temco Service Industries, Inc., testified that there was 24-hour security, hourly checks of the building’s perimeters, daily sweeping of the plaza and sidewalks, and at least one maintenance and cleaning employee assigned to the plaza area; the day staff “policed” the plaza to keep it clean and hazard-free. Buell testified that as to the two fountains, one on the north side of the plaza and the other at the south end, there were occasions when they were shut down due to extreme cold or high winds. Although Buell further testified that either he or one of the building engineers would make the decision to turn off the fountains, he was not asked the reasoning behind this decision.
Buell also testified that he had, on occasion, observed that the plaza near the fountains was wet solely because of the spray from the fountains, but was unable to say with certainty whether he had ever observed ice on the plaza resulting from the fountains’ spray. The Temco witness stated that he was unaware that the waters in the fountains ever blew onto the plaza and formed ice, and that there was never a need to barricade the fountain areas because of spraying water.
On the morning of February 6, Buell heard the predictions of high winds and the imminent arrival of a heavy snow storm. He checked in by telephone with building staff at 8:21 a.m. to give last minute reminders and instructions. The maintenance and cleaning staff was put on alert. Buell does not remember if he instructed that the fountains be turned off.
Notations from the building’s security log for February 6, included that the plaza was “dry” at 2:30 a.m. and that perimeter checks — where a security guard walked the sidewalks surrounding the building — were conducted at 1:00 a.m., 5:00 a.m., and 8:35 a.m. At 6:55 a.m., “it started snowing already.” The 8:35 a.m. notation indicates that the Madison Avenue retail stores were also checked, as was an area “leading to [the] plaza”; everything was “locked & secure.” There is no mention of the fountains or the area near the fountains prior to 9:30 a.m. A notation made at 9:52 a.m., shortly after plaintiffs accident, indicates that the wind had “picked up to 45 mph,” and referred to “fountains water,” with no further explanation.
The climatological data for New York, New York, as recorded in Central Park by the NOAA, National Climatic Data Center in February 2010, show that the highest average temperature on the first 5 days in February ranged from 30 degrees (Feb. 1) to 34 degrees (Feb. 3). The temperature averaged 27 degrees on *470 February 6, 6 degrees below normal. The winds averaged 13.7 miles an hour, but there were three-second gusts up to 37 miles per hour, and two-minute winds up to 29 miles per hour. No snow or ice was recorded on the ground, but there were traces of precipitation throughout the morning.
The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Ostrov v Rozbruch, 91 AD3d 147, 152 [1st Dept 2012]). If the moving party fails to make a prima facie showing, the court must deny the motion, “regardless of the sufficiency of the opposing papers ” (Smalls v AJI Indus., Inc., 10 NY3d 733, 735 [2008], rearg denied 10 NY3d 885 [2008] [internal quotation marks and citation omitted]).
Negligence cases, by their nature, do not normally lend themselves to summary dismissal since the question of negligence, even where the parties agree as to the underlying facts, is a question for jury determination (Villoch v Lindgren, 269 AD2d 271, 272-273 [1st Dept 2000], citing McCummings v New York City Tr. Auth., 81 NY2d 923, 926 [1993], cert denied 510 US 991 [1993]). Defendant argues that plaintiff cannot establish that the ice on which plaintiff fell was formed from the fountain’s water; additionally it argues there is nothing to show that it had sufficient notice of the icy condition in time to have remedied it before plaintiff fell.
Buell explicitly stated that he had seen water spray from the fountains wet the plaza in the warmer months, and had, at times, seen ice on the plaza in the winter, but he hedged in answering whether any of the ice had come from the fountains’ water. Defendant offers no evidence of when the fountains were turned off prior to plaintiffs accident. Given the general level of detail recorded in the building’s security log, it is curious that there is no notation concerning the fountains’ status in the hours prior to plaintiff’s accident, and no indication that the plaza itself was checked between 2:30 a.m. and the time of plaintiffs accident. Notably, her testimony that she slipped on a sheet of ice that had formed nearest the fountain is also evidence that areas of the plaza further away from the fountain were dry. There is sufficient circumstantial evidence to find that plaintiff fell on ice created from the fountain’s spray. Defendant has not sufficiently established that the ice on which plaintiff fell came from somewhere other than the fountain water; a jury should determine its source (see San Marco v Village/Town of Mount Kisco, 16 NY3d 111, 118 [2010], rearg denied 16 NY3d *471 796 [2011]). Moreover, plaintiff is not required to establish with absolute certainty where the water came from; she will ultimately be required “to show facts and conditions from which the negligence of defendant may be reasonably inferred” (Bernstein v City of New York, 69 NY2d 1020, 1022 [1987]).
While there is no evidence that defendant had knowledge of this particular ice patch in time to have remedied it before plaintiff’s accident, defendant has not shown that it had no actual or constructive knowledge that when conditions were right, water from the fountains would blow onto the plaza and form ice, a hazardous condition (see e.g. Roca v Gerardi, 243 AD2d 616, 617 [2d Dept 1997] [the plaintiffs were not required to prove that the building owners had actual or constructive notice that ice had formed after shoveled snow melted and refroze; it was sufficient to show that the defendants had notice of the condition which caused the ice to form, and the time and opportunity to correct the dangerous condition]). Knowledge of a condition that causes ice to form is sufficient to establish at least constructive notice (id.).
The facts here are somewhat analogous to those in Signorelli v Great Atl. & Pac. Tea Co., Inc. (70 AD3d 439, 439-440 [1st Dept 2010]), in which this Court reversed the motion court’s summary dismissal of the complaint, finding a question of fact as to whether the defendant had constructive notice that when there is constant heavy rain, the vestibule floor becomes wet with the tracked-in rainwater, creating a hazardous condition. In Loguidice v Fiorito (254 AD2d 714, 714 [4th Dept 1998]), the Court held that there could be an inference that because the roof was designed so that water would run from it onto the overhang above the door and down to the sidewalk where it would freeze, the defendant had actual knowledge of a recurrent dangerous condition and “could be charged with constructive notice of each specific reoccurrence of the condition” (citations omitted; see also Schmidt v DiPerno, 25 AD3d 545, 546 [2d Dept 2006] [although the defendants established they neither created nor had actual or constructive notice of the driveway’s icy condition, there was a question as to whether they had knowledge that water always exited the drainpipe and pooled in the driveway where it would freeze in winter, causing a dangerous condition]).
The facts as alleged here do not fall under Gordon v American Museum of Natural History (67 NY2d 836 [1986]) or Harrison v New York City Tr. Auth. (94 AD3d 512 [1st Dept 2012]), both of which hold that a general knowledge by the defendants that a litter condition could occur at the areas where the *472 plaintiffs fell does not establish that the defendants had actual or constructive notice of the specific litter that caused the plaintiffs’ accidents, which may have been there for only moments before it was stepped on (Gordon, 67 NY2d at 838; Harrison, 94 AD3d at 513). Their teaching is that because litter is transient and random in nature, and the presence and timing of any particular piece of litter is generally unpredictable, this alone will not establish constructive notice.
Here, the issue is ice, a hazardous condition which predictably forms when water is present and the temperature is below freezing. Even if plaintiff may not be able to establish that defendant had constructive knowledge and sufficient time to remedy or barricade the ice patch before she fell, defendant certainly has knowledge that on windy days, the fountains spray water onto the plaza, and also that water freezes in the cold. There is no need for an expert to explain to the jury how or why the wind sometimes blows water onto the plaza. “If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists. Circumstantial evidence or common knowledge may provide a basis from which the causal sequence may be inferred” (Vitanza v Growth Realties, 91 AD2d 917, 917 [1st Dept 1983] [internal quotation marks and citation omitted]).
There is sufficient evidence, including the climatological data, plaintiffs observation that she fell on a discrete-sized patch of ice near the fountain, and that defendant had knowledge that the fountains spray water onto the plaza on windy days, to require a jury to determine whether, on February 6, 2010, plaintiff slipped on ice caused by the fountain’s spray, and that defendant knew or should have known that the icy condition would occur in below-freezing weather but failed to take protective measures (see Roca v Gerardi, 243 AD2d at 617). Defendant’s motion for summary judgment should have been denied, without consideration of the sufficiency of plaintiff’s papers (Smalls v AJI Indus., Inc., 10 NY3d at 735).
Accordingly, I would modify the order of the Supreme Court to deny defendant’s motion for summary judgment.

 The building currently houses a large Apple store where the GM showroom was formerly located.